Judge Rosemary Ledet
This is a personal injury suit arising out of a collision between a Regional Transit Authority ("RTA") bus and a pick-up truck. The pick-up truck that Paul Molbert was driving collided with the RTA bus. Cody Johnson, a passenger on the RTA bus, commenced this suit against multiple defendants including the RTA; Mr. Molbert; and Mr. Molbert's employer, Anesthesia Consultants of the South, LLC ("ACS").[1]
A jury trial was held in this matter. At the close of Ms. Johnson's evidence, the trial court granted ACS's motion for directed verdict, finding that Mr. Molbert was commuting to work and was thus outside the course and scope of his employment. From the judgment granting the directed verdict, Ms. Johnson appeals.[2] We affirm.
FACTUAL AND PROCEDURAL BACKGROUND
The relevant facts in this case are undisputed. On the morning of November 20, 2009, at approximately 6:30 a.m., the above-described accident occurred on South Claiborne Avenue, near the intersection of Martin Luther King, Jr., Boulevard, *976 in New Orleans, Louisiana. At the time of the accident, Mr. Molbert was en route to work for ACS at Baptist Hospital on Napoleon Avenue. After exchanging information with the RTA bus driver, Mr. Molbert left the accident scene to report to work. He did not wait for the police to arrive to investigate the accident; however, he gave a statement to the police that night.
Seeking to recover for the personal injuries she sustained as a result of the accident, Ms. Johnson commenced this suit against multiple defendants, including Mr. Molbert's employer, ACS. She averred that, at the time of the accident, Mr. Molbert was acting within the course and scope of his employment. ACS denied liability and filed a motion for summary judgment. Although ACS admitted that Mr. Molbert was one of its employees, it denied that Mr. Molbert was acting within the course and scope of his employment. It contended that, because Mr. Molbert was commuting to work, he was outside the course and scope of his employment.
From the trial court's judgment denying the motion for summary judgment, ACS filed an application for supervisory writ. This court denied ACS's writ application. By a split vote, the Louisiana Supreme Court likewise denied ACS's writ application. Johnson v. Transit Mgmt. of Southeast Louisiana Inc., 13-2752 (La. 2/7/14), 131 So.3d 870. Before trial, ACS re-urged its motion for summary judgment. The trial court again denied the motion for summary judgment.
In May 2017, a jury trial commenced in this case. At trial, Mr. Molbert was the sole witness to testify regarding his employment with ACS and the circumstances surrounding his commute to work on the morning of the accident. He testified that, at the time of the accident, he was employed by ACS as a nurse anesthetist. He had a fixed place of employment; he worked for ACS at Baptist Hospital on Napoleon Avenue.
On the morning of the accident, he was scheduled to be on call starting at 7:00 a.m. One hour before he went on call (at 6:00 a.m.), he received a telephone call at home from his boss, requesting that he come into work to handle a case involving a college student who needed an appendectomy. As a result of the call, Mr. Molbert testified that he left home for work that morning about fifteen minutes earlier than usual.
Before reaching work, he was involved in the above-described accident. Mr. Molbert estimated the time of the accident to be between 6:20 and 6:30 a.m. According to Mr. Molbert, he was approximately five to ten minutes from work, depending on the traffic, when the accident occurred.
Mr. Molbert described being on call as a routine part of his job with ACS. He explained that, when he was on call, the circumstances-how busy his department was-determined his work schedule. Tentatively, he could come into work later than usual (at 9:30 a.m.); however, if his department was very busy, he would come into work, while on call, at his usual start time (then 7:00 a.m.).
Mr. Molbert was an hourly-paid employee of ACS. His pay period, even when he was on call, did not commence until he checked in at work. At the time of the accident, he had not yet checked in at work; hence, he was not being paid. At the time of the accident, Mr. Molbert testified that he considered himself to be on personal, not work, time.
Mr. Molbert owned the vehicle that he was driving at the time of the accident-a pick-up truck. ACS did not pay any portion of the purchase price of the vehicle. Mr. Molbert paid the maintenance, repairs, *977 gas, and all of the other expenses for the vehicle. ACS did not reimburse Mr. Molbert for any expenses of ownership of the vehicle or for any of his transportation or mileage expenses.
Mr. Molbert testified that he decided what route to take to work on the morning of the accident and that he took his regular route. He explained that he took the same route to work five days a week, including when he was on call. His regular job duties did not involve driving, running errands, or making deliveries for ACS. At the time of the accident, he was not making any deliveries or doing anything for ACS; he had not made any stops between leaving his home that morning and the scene of accident.[3]
At the close of Ms. Johnson's evidence, ACS moved for a directed verdict. In support, ACS repeated the argument it raised on its motions for summary judgment-that Mr. Molbert was commuting to work and thus outside the course and scope of his employment. Citing Mclin v. Industrial Specialty Contractors, Inc. , 02-1539 (La. 7/2/03), 851 So.2d 1135[4] as controlling, the trial court granted the motion for directed verdict. In so doing, the trial court judge orally reasoned as follows:
In McLin , the Supreme Court case cited seven criteria to consider whether or not the person was coming and going ... and that was the test that was annunciated.
*978 One, Molbert was the only one who testified, and his testimony was uncontroverted as to his time of reporting to work, and all the factors concerning his commute to work. He was not felt [sic] on his employee's premises, according to McLin . He was not on a specific mission for his employer. He was going to work to report to his employer. There was no reimbursement for travel expenses and the employer did not provide transportation. There was no implied employer consent under the circumstances while driving to work or while doing work. He wasn't traveling from one work site to another. The accident was not immediately adjacent to the place of employment. And there was no travel risks going to that place of employment. And the operation of the motor vehicle was not duties performed pursuant to his employment, i.e. he was not performing any duties for the employer at the time he was in route to his job.
Thereafter, the trial court entered a written judgment, dated July 6, 2017, granting the directed verdict and dismissing ACS as a defendant with prejudice. This appeal followed.
DISCUSSION
On appeal, Ms. Johnson's sole assignment of error is that the trial court legally erred in granting ACS's motion for directed verdict. In a jury trial, a party may move for directed verdict at the close of an opponent's evidence. La. C.C.P. art. 1810.[5] The motion for directed verdict is a procedural device available in a jury trial to promote judicial economy. Seither v. Winnebago Indus., Inc. , 02-2091, p. 3 (La. App. 4 Cir. 7/2/03), 853 So.2d 37, 39 (citing Reed v. Columbia/HCA Information Sys., Inc. , 00-1884 (La. App. 5 Cir. 4/11/01), 786 So.2d 142 ). Thus, the motion is appropriately made when the evidence overwhelmingly points to one conclusion. Madison v. Ernest N. Morial Convention Ctr.-New Orleans , 00-1929, 01-1127, p. 23 (La. App. 4 Cir. 12/4/02), 834 So.2d 578, 593 (citing Hebert v. BellSouth Telecomms., Inc. , 01-0223 (La. App. 3 Cir. 6/6/01), 787 So.2d 614 ).
A trial court should grant the motion for directed verdict "when, after considering all evidentiary inferences in the light most favorable to the non-moving party, it is clear that the facts and inferences so overwhelmingly favor a verdict for the movant, that reasonable jurors could not have arrived at a contrary conclusion." Everhardt v. Louisiana Dep't of Transp. & Dev. , 07-0981, p. 13 (La. App. 4 Cir. 2/20/08), 978 So.2d 1036, 1047 (citing Thomas v. A.P. Green Indus., Inc. , 05-1064, p. 19 (La. App. 4 Cir. 5/31/06), 933 So.2d 843, 858 ).
Standard of review
In Thomas , supra , this court enunciated the standard of review on appeal of a judgment granting a directed verdict as follows:
The standard of review on appeal of a directed verdict is whether reasonable persons could not reach a contrary verdict under the evidence.
*979 Davis v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College , 2003-2219, pp. 7-8 (La. App. 4 Cir. 11/17/04), 887 So.2d 722, 727. The question to be asked by the appellate court is not whether plaintiff proved his case by a preponderance of the evidence, but rather, whether upon reviewing the evidence submitted, the court could conclude that reasonable persons could not have reached a verdict in favor of plaintiffs. Id. The appellate court also must determine if the record supports the granting of a directed verdict, based not on a credibility determination (a factual issue), but on a sufficiency of evidence determination (a question of law). Id. ; Lott v. Lebon , 96-1328, p. 4 (La. App. 4 Cir. 1/15/97), 687 So.2d 612, 616. A directed verdict should be sustained on appeal where the reviewing court would find a jury verdict in favor of the party opposing the motion to be manifestly erroneous had the trial judge allowed the case to go to the jury. Wichser v. Trosclair , 99-1929 (La. App. 4 Cir. 2/28/01), 789 So.2d 24.
05-1064 at pp. 19-20, 933 So.2d at 858. Moreover, the propriety of a directed verdict must be evaluated in light of the applicable substantive law governing the plaintiff's claim. Everhardt , 07-0981 at p. 14, 978 So.2d at 1047 (citing Tanner v.Cooksey , 42,010, p. 6 (La. App. 2 Cir. 4/4/07), 954 So.2d 335, 339 ); Burris v. Wal-Mart Stores, Inc. , 94-0921, p. 5 (La. App. 1 Cir. 3/3/95), 652 So.2d 558, 561.
Vicarious liability
The applicable substantive law governing Ms. Johnson's claim against ACS is vicarious liability, which is codified in La. C.C. art. 2320. "In Louisiana, as elsewhere, an employer (master) is liable for a tort committed by his employee (servant) if, at the time, the servant is acting within the scope of his employment-acting, as our Civil Code Article 2320 phrases it, 'in the exercise of the functions in which ... employed.' " LeBrane v. Lewis , 292 So.2d 216, 217 (La. 1974). An employer is answerable for its employee's negligent acts "when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business." Orgeron v. McDonald , 93-1353, p. 4 (La. 7/5/94), 639 So.2d 224, 227 (citing LeBrane , supra ).
"Determining the course and scope of one's employment is intensely fact specific; it must be done on a case-by-case basis." Thomas C. Galligan, Jr., A Primer on the Patterns of Louisiana Workplace Torts , 55 LA. L. REV. 71, 73 (1994). In making the course-and-scope determination, the Louisiana Supreme Court has identified the following, non-exclusive list of relevant factors to be considered:
• the payment of wages by the employer;
• the employer's power of control;• the employee's duty to perform the particular act;
• the time, place, and purpose of the act in relation to service of the employer;
• the relationship between the employee's act and the employer's business;
• the benefits received by the employer from the act; and
• the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act.
Orgeron , 93-1353 at pp. 4-5, 639 So.2d at 227 (citing Reed v. House of Decor, Inc. , 468 So.2d 1159 (La. 1985) ).
In Reed , supra , the Supreme Court further noted the relevant policy considerations, stating:
*980 Determination of the course and scope of employment is largely based on policy. The risks which are generated by an employee's activities while serving his employer's interests are properly allocated to the employer as a cost of engaging in the enterprise. However, when the party (the alleged employer) upon whom vicarious liability is sought to be imposed had only a marginal relationship with the act which generated the risk and did not benefit by it, the purpose of the policy falls, and the responsibility for preventing the risk is solely upon the tortfeasor who created the risk while performing the act.
468 So.2d at 1162.
Given the myriad contexts in which the course and scope of employment issue may arise, the course and scope issue is one that can only be resolved by applying general rules. Orgeron , 93-1353 at p. 4, 639 So.2d at 226. The general rule that applies here, as in Orgeron , is the going-and-coming rule-that is, an employee commuting to work generally is outside the course and scope of employment. Id. Explaining the rationale underlying the going-and-coming rule, the Supreme Court in Orgeron stated:
Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Moreover, an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.
93-1353 at p. 5, 639 So.2d at 227.
In both the tort and workers' compensation contexts, the jurisprudence has recognized the applicability of the going-and-coming rule and multiple exceptions to the rule, including the special errand (or special mission) exception (hereinafter referred to as the "special mission exception") relied upon by Ms. Johnson on appeal.[6] In the instant case, it is undisputed *981 that Mr. Molbert had left his house and was en route to his workplace when he was involved in the accident. Unless the facts of this case are outside the ambit of the going-and-coming rule or fall within one of the exceptions to the rule, Mr. Molbert was outside the course and scope of his employment with ACS, precluding a finding of vicarious liability. On appeal, Ms. Johnson makes both of those arguments.
First, she contends that the going-and-coming rule is inapplicable because Mr. Molbert, like the volunteer firefighter in Matlock v. Hankel , 96-1838 (La. App. 4 Cir. 2/11/98), 707 So.2d 1016, was responding to an emergency and thus in the course and scope of employment from the time of his boss' call. Second, she contends that the special mission exception to the rule, adopted in McLin , supra , applies here. We separately address each contention. In so doing, we emphasize, as the Supreme Court held in Orgeron , that the course and scope determination must be made by engaging in a multiple factor analysis. 93-1353 at pp. 4-5, 639 So.2d at 227 (citing Reed , supra ). Thus, there is some overlap in our analysis of the two contentions.
The emergency nature of the travel under Matlock
The issue we addressed in the Matlock case was whether a volunteer firefighter is acting within the course and scope of employment while responding to a fire. In Matlock , Mr. Hankel, a volunteer fireman, received a call at his home from his fire chief to respond to a fire. Driving his personal vehicle, Mr. Hankel rushed from his home to the scene of the fire. When he arrived at the scene, Mr. Hankel struck a pedestrian with his vehicle. The pedestrian sued, among others, the Fort Pike Volunteer Fire Department ("FPV") and the City of New Orleans Fire Department ("NOFD"), contending they both were vicariously liable.[7] Rejecting an attempt to equate Mr. Hankel's response to the fire with an ordinary commute to work, this court reasoned as follows:
*982 [W]e do not believe that the response of a volunteer fireman to a fire is equivalent to an ordinary commute to work. The Supreme Court, in Orgeron, on Behalf of Orgeron v. McDonald , 93-1353pp. 5-8 (La. 7/5/94), 639 So.2d 224, 227-28 [,] has held that the "going and coming rule," under which an employee's travel from home to work and back is not usually considered to be within the course and scope of his employment, is not inflexible when the employee does not work on the employer's premises or have a fixed place of work. In Orgeron , the Supreme Court, based upon the time constraints imposed on an employee to report to a particular (non-employer premises) location to work and the emergency nature of the assignment, held that an employer's automobile accident while he was on his way to work occurred within the course and scope of his employment. While the facts of the present case are very different from those of Orgeron , the present case does include the elements of [i] time constraint on Mr. Hankel's travel and [ii] an emergency situation. Apparently, FPV volunteer firemen were expected to respond to fires directly from their homes (Mr. Hankel had his helmet, fire coat[,] and gloves at home) and it is the nature of the situation that they will respond immediately and expeditiously. We believe that, when they so respond to a fire, they are in the course and scope of their employment with FPV and NOFD.
Matlock , 96-1838 at pp. 4-5, 707 So.2d at 1019.
Ms. Johnson cites Matlock as involving similar facts-employer-motivated travel from home to work in response to an emergency-given that Mr. Molbert "had a small window of time [forty-five minutes] to drive to [his workplace] Baptist Hospital to administer anesthesia to an urgent appendectomy case." The urgency and gravity of Mr. Molbert's travel, Ms. Johnson contends, is apparent from the fact that he left the scene of the accident instead of waiting for the police to arrive to investigate. She thus contends that the policy reasons and factors in Orgeron , as well as other Louisiana Supreme Court cases ( Reed and McLin ), dictate that the risks associated with the urgency of this employer-motivated travel should have led the trial court to deny ACS's motion for directed verdict.
ACS counters that the facts of this case are clearly distinguishable from the facts in Matlock ; unlike here, "[t]he fireman [in Matlock ] was clearly traveling from one worksite to another, i.e. , from his home, to the fire, as volunteer firemen were expected to respond to emergencies from their homes. Essentially, their homes took the place of a fire house." ACS contends that Mr. Molbert was traveling from home to work for a non-emergency situation and that he was not under ACS's control. ACS points out that Ms. Johnson erroneously relies on the fact that Mr. Molbert, like the firefighter in Matlock (Mr. Hansel), was not being paid to argue the lack of payment of wages is not a factor for this court to consider under the circumstances of this case.
In Matlock , this court held that "[t]he fact that Mr. Hankel, as a volunteer fireman, was not paid for his services does not prevent there being a master-servant relationship." 96-1838 at p. 4, 707 So.2d at 1018. As noted, ACS points out that Ms. Johnson cites this finding in Matlock to argue that the lack of payment of wages, under these circumstances, should not be a factor here. This argument, as ACS correctly points out, overlooks that a volunteer, by definition, is never paid. Unlike the volunteer firefighter in Matlock , Mr. Molbert was an hourly-paid employee who *983 was not compensated for his travel time; he was not being paid at the time of the accident only because he had not checked in at his workplace.The fact that Mr. Molbert was not being paid is a factor that the court should consider in deciding the course and scope issue. Indeed, the first Orgeron factor used to determine whether an employee is in the course and scope is "the payment of wages by the employer." 93-1353 at p. 4, 639 So.2d at 227.
The rationale underlying the holding in the Matlock case is that a firefighter is "at work" from the time he begins to respond to the fire.[8] Citing this rationale, courts in several other jurisdictions have declined to apply the going-and-coming rule in the context of a volunteer firefighter responding to a fire. Strickland v. Galloway , 348 S.C. 644, 648, 560 S.E.2d 448, 450 (Ct. App. 2002) (collecting cases including Matlock , supra ; and Estate of Soupene , supra ). "The general reasoning followed by these courts is the volunteer firefighter is not 'going to work' when responding to the call but is 'at work' when responding to the emergency call. Because these volunteers must respond immediately and expeditiously, they are performing the fire department's business when they embark on their response to a fire." 348 S.C. at 648-49, 560 S.E.2d at 450.[9] Unlike a volunteer firefighter's job, a nurse anesthetist's job does not intrinsically involve travel.[10] The underlying rationale of the Matlock case is thus inapposite here.
As noted earlier, in Matlock , we relied upon two elements from Orgeron to find the firefighter was acting in the course and scope of his employment in responding to the fire-[i] the time constraint on the travel; and [ii] an emergency situation. Neither of those elements is present here. Mr. Molbert testified that this situation "wasn't an emergency like I had to scream over there to get, you know, lights and sirens and everything. It just was a situation where I had to get there in a relatively timely manner." He characterized this as an urgency-not an emergency-situation.
Nor were there any time constraints on Mr. Molbert's travel beyond those placed on any commuter who is required to get to work by a particular time. See Guidry v. Chevron U.S.A., Inc. , 461 So.2d 625, 627 (La. App. 1st Cir. 1984) (observing that *984 "[r]equiring an employee to show up for work does not make transportation 'incidental' to the employment contract"). Contrary to Ms. Johnson's suggestion that Mr. Molbert was rushing to get to work, Mr. Molbert indicated that he was engaged in his normal commute to work with the exception that he left home a few minutes earlier than usual. Ms. Johnson's reliance on the fact that Mr. Molbert declined to stay on the scene to wait for the police as evidence that he was rushing to work is misplaced; Mr. Molbert's post-accident actions are not relevant to the question of whether Mr. Molbert was in the course and scope of his employment when the accident occurred.
There are two additional distinctions between the facts in the Matlock case and the facts of this case. One is that the firefighter in Matlock , Mr. Hankel, was on call. Mr. Molbert was not on call either at the time of his boss' call nor at the time of the accident. The other is that, in Matlock , the accident occurred at, or very near, the scene of the fire. As ACS points out, the accident occurred in the one place to which Mr. Hankel was expected to travel-the scene of the fire. In contrast, Mr. Molbert was five to ten minutes from his workplace, depending upon traffic, when the accident occurred. This accident did not occur at, or near, his workplace-the hospital.
For all these reasons, Ms. Johnson's reliance on the Matlock case is misplaced. We thus turn to the issue of whether the special mission exception to the going-and-coming rule applies here.
The special mission exception under McLin [11]
In McLin , a workers' compensation case, the Louisiana Supreme Court first recognized the special mission exception to the going-and-coming rule. Noting that it *985 had not previously had the opportunity to address the exception, the Supreme Court found it significant that the majority of other state supreme courts had applied the exception in some form. McLin , 02-1539 at p. 6, 851 So.2d at 1140-41 (citing 1 Arthur Larson & Lex K. Larson, LARSON'S WORKERS' COMPENSATION LAW § 14.05 (2002) ("Larson ") ). Continuing, the Supreme Court observed that the most oft-cited definition of the special mission exception is the one provided by Larson , which is as follows:
When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual going and coming rule, the journey may be brought within the course and scope of employment by the fact that the trouble and time of making the journey, or special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.
McLin , 02-1539 at p. 6, 851 So.2d at 1141 (quoting Larson , supra ).
Recognizing the exception, the Supreme Court held that "if an employee is found to be on a special mission, he will be considered to be within the course of his employment from 'portal-to-portal,' or in other words, from his home to the location of the mission, or alternatively, from the location of the mission to his home." McLin, 02-1539 at pp. 9-10, 851 So.2d at 1143 (citing Larson , supra , § 14.05[1]-14.05[2] ).
The gist of Ms. Johnson's contention is that Mr. Molbert's boss' call, requesting him to come into work earlier than usual, transformed his ordinary commute into a special mission for his employer. ACS counters that the trial court correctly concluded Mr. Molbert was simply commuting from home to work. ACS contends that Mr. Molbert was merely called into work at a different time than normal. In support of its position, ACS cites Rattliff v. Regional Extended Home Care Pers. Servs., L.L. C., 13-1175 (La. App. 3 Cir 3/5/14), 134 So.3d 129, a workers' compensation case.[12]
In deciding whether the special mission exception applies in difficult cases, Larson notes the following three principal variables that the jurisprudence has considered: [i] the relative regularity or unusualness of the particular going-and-coming trip; [ii] the relative onerousness of the trip compared with the service to be performed at the end of the trip; and [iii] the suddenness of the call. Larson , supra , at § 14.05[3].
Applying those principles here, we find that the special mission exception is inapplicable. Mr. Molbert testified that the trip from his home to his workplace on the morning of the accident was the same trip he routinely made, five days a week. When, as here, the trip is "relatively regular, whether every day, ... or at frequent intervals, ... the case begins with a strong presumption that the employee's going and coming trip is expected to be no different from that of any other employee with reasonably regular hours and place of work." Larson , supra , at § 14.05[3].
*986 "The 'onerousness' of the journey depends not only on its length but also on the circumstances under which it is made, i.e., the time of day, whether it is a regular workday, or the conditions of travel." Barnes v. Children's Hosp. , 109 Md.App. 543, 558, 675 A.2d 558, 565 (Md. Ct. Spec. App. 1996). Nothing about this trip was onerous. Indeed, the only difference between this trip and any other trip Mr. Molbert made to work was that he left home about fifteen minutes earlier than usual.
Finally, "[w]hen an employee must drop everything and travel to the workplace, this indicates that the travel itself could be part of the service rendered." Id. The instant case was not one in which Mr. Molbert was required to "drop everything and travel to the workplace"; rather, he testified that he was simply required to get there "in a relatively timely manner." Indeed, Mr. Molbert testified that he left his home only fifteen minutes earlier than usual.
Contrary to Ms. Johnson's contention, the fact that Mr. Molbert's boss called him to come into work earlier than usual-as opposed to commuting to work on his normal work schedule-does not support a finding that he was on a special mission. See Cooper v. Robert Ledford Funeral Home, Inc. , 2013 WL 3947758, at *4 (Tenn. Ct. App. 7/29/13) (observing that "the fact that Mr. Tipton [the employee] was 'called in,' rather than commuting to work on his normal schedule is a distinction without a difference").A similar contention regarding the effect of the employee being "called in" to work was rejected in Shumway v.Geneva Gen. Hosp. , 649 N.Y.S.2d 288, 289, 233 A.D.2d 868 (N.Y. App. Div. 1996).
Affirming a judgment granting summary judgment in favor of the employer-hospital in a tort suit seeking to impose vicarious liability, the court in Shumway reasoned that "[t]he fact that the employee, a nurse, was driving to work after having been called in as a result of a high patient census in her unit of the Hospital does not take this case out of the general [going-and-coming] rule." Id. The court cited the following three factors supporting its decision: "[1] The employee was not being compensated for her 'on-call' status or for the commute, [ii] the work was being performed during the employee's regularly scheduled shift and [iii] the employer had no control over the means by which the employee traveled to work." Id.
The facts in this case are parallel to the facts cited in the Shumway case. Mr. Molbert was not compensated by ACS for either his commute or his on call time. Mr. Molbert testified that if the appendectomy case began at 7:00 a.m., it would have been during his usual work shift hours. ACS had no control over the means by which Mr. Molbert traveled to work.
The Louisiana Supreme Court has noted that "the going and coming rule applies nicely when the employee has a fixed place of work, so that his traveling back and forth between his home and his fixed place of work is almost never in the course of employment." Orgeron , 93-1353 at p. 5, 639 So.2d at 227. Mr. Molbert had a fixed place of work (Baptist Hospital), and he was traveling to that place of work. Since he was merely en route to work, the special mission exception is inapplicable.
Virtually all special mission exception cases "involve an element of unusualness in the trip: in terms of time, destination (job site), or duties to be performed." David Polin, Workers' Compensation: Special Mission Exception to Going-and-Coming Rule , 32 Am.Jur. Proof of Facts 2d 199, 206 (1982) ("Polin "). "The very name of the exception suggests that the injury is compensated because the travel was pursuant to some special work." Comment, *987 The Special Errand Exception , 6 Stan. L.Rev. 383, 390 (1954). "These three factors-[i] unusual time, [ii] unusual destination (place of work), and [iii] unusual work-combine and recombine in the cases. Sometimes all three are present, always at least one of them." Polin , supra.
In this case, neither the destination (place of work) nor the work itself was unusual. Mr. Molbert's destination was the hospital-his routine workplace; the work was his routine job-administering anesthesia to a patient. The unusual time factor, however, requires additional analysis.
Although at the time of the accident Mr. Molbert, technically, was not yet on call (his on call status did not start until 7:00 a.m.), the day of the accident was an on-call day for him. Mr. Molbert explained that, on days when he was on call, his usual time of reporting to work varied, depending upon how busy his department was. The gist of his testimony was that on the days when he was on call, he could sleep in-report to work at 9:30 a.m. instead of his normal 7:00 a.m. report time-unless his department was very busy. On the morning of the accident, Mr. Molbert testified that he received a call from his boss asking him to come in earlier than normal because there was an urgent appendectomy case. The call was simply to come into work at an earlier time because the department was busy that morning. The unusual time factor is thus not met here.
Regardless, even assuming, arguendo , that the unusual time factor is met here, the special mission exception generally is found to be "inapplicable when the only special component is the fact that the employee began work earlier or quit work later than usual." Larson , supra , § 14.05[4]. Hence, for all the above reasons, we conclude that the trial court correctly found the special mission exception inapplicable here.
After reviewing the evidence, in light of the substantive law regarding vicarious liability, we find that reasonable persons could not have reached a contrary result as to Ms. Johnson's vicarious liability claim against ACS. Thus, we find no error in the trial court's grant of ACS's motion for directed verdict.
DECREE
For the forgoing reasons, the trial court's judgment is affirmed.
AFFIRMED
BELSOME, J., DISSENTS WITH REASONS
BELSOME, J., DISSENTS WITH REASONS
I respectfully dissent from the majority opinion. As stated by the majority, "[t]he standard of review on appeal of a directed verdict is whether reasonable persons could not reach a contrary verdict under the evidence."[1] Given this Court's standard of review, I find that the facts presented in this case could have led a reasonable juror to make a contrary finding. Specifically, a reasonable juror could have concluded that the Orgeron factors of time constraint on travel and an emergency situation applied to the facts of this case.[2] I find that the trial court erred in granting a directed verdict on the issue of course and *988 scope of employment. Accordingly, I would grant a new trial.

Mr. Molbert was employed by ACS as a nurse anesthetist.

At the close of the jury trial, a judgment was rendered against Mr. Molbert and the other named defendants. The jury awarded damages totaling $1,000,000 and allocated fault as follows: 20% to the RTA bus driver; 80% to Mr. Molbert. In its appellee brief, ACS states that "the Appellant [Ms. Johnson] has settled with and dismissed all claims against all other named Defendants." None of the other named defendants is before us on this appeal.

In his subsequent testimony during the defendants' case (after ACS was dismissed), Mr. Molbert testified as follows regarding the appendectomy case:
It was an urgent case. I needed to get there in a timely manner, but not necessarily in an emergent manner as such. I refer to it as an emergency because it bumps any surgery that might be added on, or that's not-that's not-that's like an elective surgery. And you know, I had to be there. I had a 45 minute window, typically 45 minute window to get there.
As to his decision not to wait for the police to arrive to investigate the accident, Mr. Molbert further testified that "[t]his was 2009, post-Katrina New Orleans, it was like to get a response time, I don't know, my guess it would have been more than an hour. And if the surgeon was there and if the crew was there, it would probably be the better part of valor to go and take care of the patient with the appendix."
In her appellant brief, Ms. Johnson cites Mr. Molbert's subsequent testimony quoted above. This testimony, however, was taken after the directed verdict was granted. This testimony thus was not part of the evidence the trial court relied upon in making its ruling. Regardless, considering this additional testimony would not change the result. Indeed, the substance of this testimony is not materially different than Mr. Molbert's testimony during Ms. Johnson's case-in-chief, which the trial court considered in granting the directed verdict.

In McLin , a workers' compensation case, the Supreme Court enumerated the following exceptions to the going-and-coming rule:
(1) If the accident happened on the employer's premises;
(2) If the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to his employer's order;
(3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses;
(4) If the employee was doing work for his employer under the circumstances where the employer's consent could be fairly implied;
(5) If the employee was hurt while traveling to and from one work site to another;
(6) If the employee was injured in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee (the "threshold doctrine"); and
(7) If the operation of a motor vehicle was the performance of one of the duties of the employment of the employee.
02-1539 at p. 5, n. 1, 851 So.2d at 1140.

Directed verdicts are governed by La. C.C.P. art. 1810, which provides as follows:
A party who moves for a directed verdict at the close of the evidence offered by an opponent may offer evidence in the event that the motion is not granted, without having reserved the right so to do and to the same extent as if the motion had not been made. A motion for a directed verdict that is not granted is not a waiver of trial by jury even though all parties to the action have moved for directed verdicts. A motion for a directed verdict shall state the specific grounds therefor. The order of the court granting a motion for a directed verdict is effective without any assent of the jury.

The parties, in their briefs, cross-cite, almost interchangeably, the jurisprudence on the going-and-coming rule and special mission exception in the workers' compensation and tort contexts. As one commentator has observed, an unresolved issue is the extent to which the "course and scope of employment" standard in the workers' compensation context is the same, or similar to, the "course and scope" standard in the tort context for vicarious liability. Frank L. Maraist & Thomas C. Galligan, Jr., Louisiana Tort Law , § 13.02[1] (2d ed. 2017). Another commentator has cautioned against the cross-citation of the workers' compensation and tort jurisprudence, noting that "the compensation scheme and the tort system exist for different purposes, and it is not a good analytical technique to borrow concepts from one to be used in the other." 13 H. Alston Johnson III, La. Civ. L. Treatise, Workers' Compensation Law and Practice , § 144 (5th ed. 2017).
Addressing a similar cross-citation issue, the federal district court in Hawkins v. Fowler , 2010 WL 1851072, at *3 (M.D. La. 5/7/10) (unpub. ), observed that the Louisiana Supreme Court has noted that "workers compensation cases are different from tort cases, recognizing that application of the going and coming rule might take on different meanings under each regime." Id. (citing Orgeron , 93-1353 at p. 6, 639 So.2d at 226 ). Nonetheless, the Hawkins court reasoned that there was sufficient similarity in purpose of the going-and-coming rule under the workers' compensation and tort schemes to allow application of the general principles and exceptions to the limited course and scope issue before it; the Hawkins court explained its reasoning as follows:
Namely, that the purpose behind the going and coming rule is the same in workers' compensation and tort contexts, that is, to eliminate substantial administrative concerns if the course and scope of employment extends to travel to and from work. Compare 13 La. Civ. L. Treatise, Workers' Compensation Law and Practice § 168 (4th ed.) (stating "if we were to admit that the trip to and from employment might be covered, when should we say that trip begins? When the employee leaves his house to begin his trip? When he comes downstairs for breakfast? When he gets up to shave and shower, so that he can come downstairs for breakfast, so that he can leave his house to begin his trip? The administrative problems here are substantial.") with Orgeron , 639 So.2d at 227 (a tort case stating "treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination").
2010 WL 1851072, at *3, n. 1. The same is true here. See Glander v. Marshall Hosp. , 2003 WL 649127, at *3 (Cal. Ct. App. 2/28/03) (unpub. ) (observing that "[c]ases decided under the workers' compensation law are helpful but not determinative in deciding cases involving vicarious liability, because the former have a broader statutory test allowing for injuries that 'arise out of' employment" and that "[t]he special errand doctrine, however, rests in both situations on finding a benefit to the employer, thus there is no reason we should interpret it more narrowly for purposes of respondeat superior") (internal citations omitted).
Nonetheless, we acknowledge our prior holding in Matlock v. Hankel , 96-1838, p. 6 (La. App. 4 Cir. 2/11/98), 707 So.2d 1016, 1019-20, that "[e]ntitlement to worker's compensation benefits is determined by the worker's compensation statutes whereas vicarious liability for the torts of servants is governed by Article 2320 of the Civil Code and the caselaw applying that article." We thus consider the workers' compensation jurisprudence as instructive, not dispositive, in resolving the tort issue before us. In any event, we find, under the circumstances presented here, the result is the same under either regime.

Mr. Hankel, the firefighter, volunteered for the FPV. The FPV worked for the NOFD, which was in charge of all fires.

The rationale is aptly explained in the concurring opinion in Halford v. Nowak Const. Co ., as follows:
Where travel is truly an intrinsic part of the job, the employee has already assumed the duties of employment once he or she heads out for the day's work. Thus, the employee is no longer "on the way to assume the duties of employment"-he or she has already begun the essential tasks of the job. Such an employee is covered by the Workers Compensation Act and is not excluded from coverage by the going-and-coming rule. See Estate of Soupene v. Lignitz , 265 Kan. 217, 222-25, 960 P.2d 205 (1998) (finding that volunteer firefighter had assumed duties related to employment when Hewlett-Packard Company began responding to emergency call and was thus entitled to workers compensation benefits).
39 Kan.App.2d 935, 942-43, 186 P.3d 206, 212 (Leben, J., concurring).

In Strickland , the court expressly declined to consider the volunteer firefighter responding to a fire under the special mission exception to the going-and-coming rule. Instead, the court opted to treat this as a situation where the rule was inapposite. 348 S.C. at 648, n. 7, 560 S.E.2d at 449 (observing that "we hold the firefighter to be outside the rule, not an exception to it").

See Loofbourow v. Texas Employers Ins. Ass'n , 489 S.W.2d 456, 458 (Tex. Civ. App. 1972) (finding a nurse-anesthetist who was on call and involved in an accident en route to the hospital was not in the course and scope; observing that "all of appellant's duties of employment were performable at Hillcrest Hospital").

Although McLin was a workers' compensation case, the special mission exception also has been recognized in the tort context. As one commentator observed, "if the employee is traveling in the performance of some duty related to the employment, although the employee is en route to or from work, the courts have recognized a 'special errand' or 'special mission' exception to the general rule." Christopher Vaeth, Annotation, Employer's Liability for Negligence of Employee in Driving His or Her Own Automobile , 27 A.L.R.5th 174, § 4[a] (1995) ("Annot. ") (citing); Orgeron , supra ("apparently recognizing exception"); Michaleski v. W.Preferred Cas. Co. , 472 So.2d 18, 21 (La. 1985) ; Castille v. All Am. Ins. Co. , 550 So.2d 334, 337 (La. App. 3d Cir. 1989) ; Pierce v. Ellis , 519 So.2d 251, 253 (La. App. 5th Cir. 1988) ; St. Paul Fire & Marine Ins. Co. v. Roberts , 331 So.2d 529, 538 (La. App. 1st Cir. 1976) ). In Orgeron , the Louisiana Supreme Court did not use the terms "special errand" or "special mission"; instead, the Court used the terms "special order" and "specially ordered trip." Orgeron , 93-1353 at p. 8, 639 So.2d at 228.
This court has recognized that the Supreme Court, in Orgeron , calls into question the continued viability of "a blanket 'special errand' rule" by its statement that "special orders alone do not necessarily cause a trip to fall within the course and scope of employment." Fasullo v. Finley , 00-2659, p. 8 (La. App. 4 Cir. 2/21/01), 782 So.2d 76, 82 (citing Bertrand v. Bollich , 97-164, p. 7 (La. App. 3 Cir. 6/4/97), 695 So.2d 1384, 1388 ). Indeed, in Orgeron , the Supreme Court noted that "[i]f McDonald [the employee] had been notified to report to Fourchon for a special assignment two or three days before the time of reporting, then the trip to Fourchon from wherever arguably would have been outside the course of his employment." 93-1353 at p. 7, 639 So.2d at 228. In order to bring the employee into the course and scope of employment, the Supreme Court in Orgeron required not only a special order but also other exceptional circumstances. In Matlock , this court applied similar reasoning, noting two Orgeron elements were present that rendered the firefighter's commute to the scene within the course and scope of his employment-[i] time constraint on the travel; and [ii] an emergency situation. As discussed elsewhere in this opinion, neither of those elements is present here.

In Rattliff , the plaintiff, a home health nurse ("Ms. Rattliff"), was involved in an accident when she was driving her personal vehicle from her home to her employer's elderly client's home. Rejecting Ms. Rattliff's argument that she was on a special mission for her employer, the court reasoned that Ms. Rattliff's employment relationship did not begin until she arrived at the client's home each day. The court further reasoned that Ms. Rattliff was not on a special mission, as she was merely traveling from her home to the client's home. Moreover, the court noted that Ms. Rattliff's own testimony defeated her contention that she was on a special mission.

Thomas v. A.P. Green Indus., Inc. 05-1064, p.19 (La.App. 4 Cir. 5/31/06), 933 So.2d 843, 858 (citing Davis v. Board of Supervisors of Louisiana State University and Agricultural and Mechanical College , 2003-2219, pp. 7-8 (La. App. 4 Cir. 11/17/04), 887 So.2d 722, 727 ).

Orgeron v. McDonald, 93-1353 (La. 7/5/94), 639 So.2d 224.