NICHOLAS J. QUATROY

VERSUS

ANDREW MICHAEL THORNTON, PERRONE
& SONS, L.L.C. AND ALLSTATE PROPERTY
AND CASUALTY INSURANCE COMPANY

NO. 21-CA-732

FIFTH CIRCUIT

COURT OF APPEAL

STATE OF LOUISIANA

ON APPEAL FROM THE TWENTY-FOURTH JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON, STATE OF LOUISIANA
NO. 793-735, DIVISION "O"
HONORABLE DANYELLE M. TAYLOR, JUDGE PRESIDING

September 28, 2022

**SUSAN M. CHEHARDY**
**CHIEF JUDGE**

Panel composed of Judges Susan M. Chehardy,
Fredericka Homberg Wicker, and Jude G. Gravois

**AFFIRMED**
   **SMC**
   **JGG**

**DISSENTS WITH REASONS**
   **FHW**

FIFTH CIRCUIT COURT OF APPEAL
A TRUE COPY OF DOCUMENTS AS
SAME APPEARS IN OUR RECORDS

Jalisa Walker
Deputy, Clerk of Court

COUNSEL FOR PLAINTIFF/APPELLANT,
NICHOLAS J. QUATROY
 Thomas E. Loehn

COUNSEL FOR DEFENDANT/APPELLEE,
PERRONE & SONS, L.L.C.
 Matthew J. Hamilton

**CHEHARDY, C.J.**

This appeal arises from an automobile accident in which the plaintiff, Nicholas Quatroy, contends that the defendant, Michael Andrew Thornton, was in the course and scope of his employment at the time of the accident and therefore Thornton's employer, Perrone & Sons, LLC, may be held vicariously liable for plaintiff's damages. For the reasons that follow, we affirm the trial court's ruling granting Perrone's motion for summary judgment and dismissing with prejudice plaintiff's vicarious liability claims against it.

STATEMENT OF FACTS AND PROCEDURAL HISTORY

On February 1, 2019 at approximately 8:45 a.m., plaintiff Quatroy was involved in an automobile accident with defendant Thornton when Thornton was on his way to a company sales meeting at his employer's warehouse in Metairie. Law enforcement issued a ticket to Thornton for disregarding a stop sign. Thornton paid the ticket and has acknowledged his responsibility for causing the accident.

The underlying facts regarding Thornton's employment responsibilities are essentially undisputed. Thornton works primarily from his house as an outside sales representative, working on commission only. He interacts with his customers via phone calls, texts, and emails approximately 95% of the time and sees his customers in person only about 5% of the time. He is not required to "clock in" for work. Thornton has a sales manager but he does not have to notify anyone if he visits a customer. On the morning of the accident, he left his home to drive to the Perrone warehouse approximately five minutes away to attend the sales meeting, which usually occurs on the first Friday of every month and is held at the Perrone warehouse about 70% of the time. The sales manager encouraged all salespersons to attend, but Thornton explained that he was not reprimanded for failing to attend. In his six-and-a-half years with the company, Thornton stated that he may have missed five or six meetings, without any adverse consequences. In answers to

interrogatories, Perrone indicated that all of the sales staff, including Thornton, is required to attend the monthly sales meeting. Thornton explained that some of his co-workers saw the accident when they were on their way to the meeting that morning.

Perrone does not provide a company vehicle for Thornton; Thornton uses his personal vehicle when needed for work-related travel. Perrone does not reimburse Thornton for mileage but provides a gas credit card to use when he is visiting customers. Perrone's records show that Thornton last used the gas card seven days before the accident at issue.

On the morning of the accident, Thornton called his boss before leaving his house to let his boss know that he was on his way, and to ask whether he should bring donuts to the meeting. His boss indicated that it was not necessary to bring donuts. Thornton then traveled to the Perrone warehouse in his own truck, making no stops and without talking on the phone. The day before the accident, Thornton had placed a magnetic Perrone & Sons sign on his truck door to make a delivery to a customer. The magnet remained on his truck at the time of the accident, because Thornton had forgotten to remove it after the previous day's delivery.

Plaintiff filed suit against Thornton, Thornton's personal auto liability insurer, and Thornton's employer, Perrone & Sons, L.L.C. Plaintiff settled his claim against Thornton and Thornton's personal auto insurer but reserved his right to pursue his vicarious liability claims against Perrone.

Perrone moved for summary judgment arguing that Thornton was not in the course and scope of employment at the time of the accident, thus, it could not be held vicariously liability as a matter of law. Plaintiff opposed Perrone's motion and filed his own motion for summary judgment, arguing that Perrone should be held vicariously liable. Safe Light Group, Inc., plaintiff's employer who paid worker's compensation benefits to plaintiff as a result of the accident, also opposed

Perrone's motion for summary judgment. The trial court granted Perrone's motion and dismissed plaintiff's claims against Perrone with prejudice. Plaintiff now appeals that ruling.

LAW AND ANALYSIS

Appellate courts review a judgment granting or denying a motion for summary judgment *de novo*. *Robinson v. Otis Condominium Ass'n, Inc.*, 20-359 (La. App. 5 Cir. 2/3/21), 315 So.3d 356, 361, *writ denied*, 21-343 (La. 4/27/21), 314 So.3d 837. Under this standard, we use the same criteria as the trial court in determining if summary judgment is appropriate: whether there is a genuine issue of material fact and whether the mover is entitled to judgment as a matter of law. *Id.*

A motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966 A(3). The burden of proof rests with the mover. La. C.C.P. art. 966 D(1). Nevertheless, if the mover will not bear the burden of proof at trial on the issue that is before the court on the motion for summary judgment, the mover's burden on the motion does not require him to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense. *Id.* The burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

In general, summary judgment is appropriate when all the relevant facts are marshaled before the court, the facts are undisputed, and the only issue is the ultimate conclusion to be drawn from the applicable law. *Hogg v. Chevron USA, Inc.*, 09-2632 (La. 7/6/10), 45 So.3d 991, 999 (citing *Smith v. Our Lady of the Lake*

*Hospital, Inc.*, 93-2512 (La. 7/5/94), 639 So.2d 730, 752). As such, determining whether Thornton was in the course and scope of his employment based on the undisputed facts is an issue of law appropriate for summary judgment.

An employer is answerable for the damage occasioned by his servant in the exercise of the functions in which the servant is employed. La. C.C. art. 2320. For an employer to be held vicariously liable for the actions of an employee under La. C.C. art. 2320, the plaintiff must show that (1) an employer-employee relationship existed between the tortfeasor and the employer, and (2) the negligent act of the tortfeasor was committed within the course and scope of his employment with the employer. *Koehl v. RLI Ins. Co.*, 21-68 (La. App. 5 Cir. 5/12/21), 325 So.3d 1110, 1113 (citing *Hull v. Jefferson Parish Hosp. Dist. No. 1*, 16-273 (La. App. 5 Cir. 4/26/17), 220 So.3d 838, 844). There is no dispute that an employment relationship existed; instead, the issue is whether Thornton was working for Perrone at the time of the accident.

An employee's conduct falls with the course and scope of his employment if the conduct is the kind that he is employed to perform. *Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224, 226. Stated differently, an employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to his employment duties that it constitutes a risk of harm attributable to the employer's business. *Koehl*, 325 So.3d at 1114.

Because an employee usually does not begin work until he reaches his employer's premises, an employee traveling to or from work generally is not in the course and scope of employment. *White v. Canonge*, 01-1227 (La. App. 5 Cir. 3/26/02), 811 So.2d 1286, 1289. *See also Orgeron*, 639 So.2d at 227; *Knowles v. State Farm Mut. Auto. Ins. Co.*, 12-806 (La. App. 5 Cir. 3/27/13), 113 So.3d 417, 419 (finding that unless an employee has a duty to perform a specific task for his employer when traveling to the workplace, the employee's commute is generally

not in the course and scope of his employment). There are three exceptions to the general exclusion regarding commuting to and from work, however: an employee may be found to be in the course and scope of employment if (i) the employer provides the transportation, (ii) the employer provides wages or expenses for the time the employee spends traveling, or (iii) the operation of the vehicle is incidental to or in performance of the employee's responsibility. *Id.*; *see also Winzer v. Richards*, 50,330 (La. App. 2 Cir. 1/13/16), 185 So.3d 876, 881.

Perrone states that Thornton was not responding to a work call, nor obtaining supplies, nor performing any job duty benefitting Perrone when the accident occurred. Moreover, even though Perrone provides a gas card to Thornton to cover the cost of fuel when visiting customers, Perrone did not reimburse Thornton for travel time or other expenses related to the maintenance of Thornton's personal vehicle. Finally, Perrone did not control Thornton's movement to and from work. Because Perrone lacked control of Thornton during his travel to the warehouse for the monthly sales meeting, Perrone avers that Thornton was not in the course and scope of employment at the time of the accident.

In opposition, plaintiff relies on the special-mission exception to the "going and coming rule" of *Orgeron*, as discussed in *McLin v. Industrial Specialty Contractors, Inc.*, 02-1539 (La. 7/02/03), 851 So.2d 1135, and *Johnson v. Transit Mgmt. of Southeast La., Inc.*, 17-793 (La. App. 4 Cir. 2/28/18), 239 So.3d 973, 985. The special-mission exception states that when an employee who has identifiable time and space limits on his employment makes an off-premises journey, which would normally not be covered by the going-and-coming rule, the journey is brought within the course and scope of employment by the fact that the trouble and time of making the journey, or special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently

substantial to be viewed as an integral part of the service itself. *Johnson*, 239 So.3d at 985-86. According to plaintiff, because attendance at the meeting was mandatory, and the only time Thornton was required to travel to the Perrone warehouse was when he had to attend the sales meeting or to retrieve supplies for customers, he was on a job-related mission to attend a "special meeting" for his employer. He was not merely traveling to or from work, because 95% of his work is done from his home. Plaintiff contends that in this circumstance Perrone "controlled" Thornton pursuant to La. C.C. art. 2320 by taking him away from his regular work place for the mandatory special meeting. Additionally, Perrone's magnetic sign was attached to Thornton's vehicle, and Thornton used gas supplied by Perrone's gas card. As such, plaintiff contends that Thornton was in the course and scope of his employment at the time of the accident.

In support, plaintiff relies on *St. Paul Fire & Marine Ins. Co. v. Roberts*, 331 So.2d 529, 538 (La. App. 1st Cir. 1976). There, the court of appeal determined that Roberts, an employee returning to his home in Ponchatoula on a Sunday after delivering oil to his general foreman in Denham Springs, was in the course and scope of employment because he was performing a "specific errand" for his employer.

Plaintiff also points to *McLin v. Industrial Specialty Contractors, Inc.*, 02-1539 (La. 7/02/03), 851 So.2d 1135, a worker's compensation case.[1] There, the plaintiff attended a safety meeting at another location after normal working hours and was injured in an auto accident on his way home. The worker's compensation hearing officer determined that the employee was on a special mission for his

_____

[1] In *Johnson*, the Fourth Circuit Court of Appeal discussed the application of precedent from worker's compensation cases that have evaluated the going-and-coming rule to vicarious liability tort cases, noting that the application of the rule "might take on different meanings under each regime." The Court found that the worker's compensation jurisprudence was instructive rather than dispositive when applied to vicarious liability cases, but ultimately determined that under the circumstances in that case, the result would be the same under either regime. 239 So.3d at 980 n.6.

employer, but the hearing officer did not extend that special mission to include the employee's trip home. The Supreme Court agreed that McLin was on a special mission and explained that "the narrow issue to be decided is whether the fact that McLin's journey home from the safety meeting overlapped with his daily route from [work] prevents the application of the special mission exception," ultimately finding that it did not. The Court held that when an employee engages in a special mission, any injury that occurs en route from the employee's home to the location of the mission, or from the location of the mission to the employee's home, is considered to be within the course of employment. *Id.* at 1138.

We disagree with plaintiff's characterization of Thornton's attendance at the monthly sales meeting as a "special mission" or "special errand" for his employer and find *McLin* and *Roberts* distinguishable. "For a mission to qualify as a special mission and thus be considered as employment-related rather than personal, an employee is deemed to be in the course of employment when he is engaged in the direct performance of duties assigned (i.e., requested, directed, instructed or required) by his employer." *Ruiz v. City of New Orleans*, 12-405 (La. App. 5 Cir. 1/16/13), 109 So.3d 52, 56; *see also Brightbill v. Circuit Grand Bayou, L.L.C.*, 21-578 (La. App. 5 Cir. 5/11/22), 342 So.3d 127, 138; *Biscamp v. Sysco E. Texas*, 46,182 (La. App. 2 Cir. 4/13/11), 63 So.3d 1097, 1100.

In our view, the fact that the sales meeting was a long-standing monthly occurrence suggests that the meeting was not "special" but rather an ordinary part of Thornton's job that usually occurred on the first Friday of every month. "Special" is defined as "distinctive or unique, exceptional, or unusual." *See* WEBSTER'S NEW WORLD DICTIONARY AND THESAURUS, 611 (2d Ed.). By definition, then, "special" is different from "normal." Without more evidence to establish the sales meeting as a "special mission," we cannot say that Thornton's early morning travel to his employer's regular place of business for a regularly

scheduled meeting falls within the special-mission exception to the going-and-coming rule.

The *Johnson* case to which plaintiff refers supports our conclusion. In *Johnson*, the Court of Appeal determined that the nurse anesthetist who was called to work early for an emergency, and who was involved in an auto accident with a bus while on the way to work that day, was not on a special mission for the employer. *Johnson* considered three principal variables for determining whether an employee is traveling on a special mission: (i) the relative regularity or usualness of the particular going-and-coming trip; (ii) the relative onerousness of the trip compared with the service to be performed at the end of the trip; and (iii) the suddenness of the call. *Johnson*, 239 So.3d at 985. The nurse testified that he made the same trip five days a week. The court of appeal found that when the trip is "relatively regular, whether every day, … or at frequent intervals, … the case begins with a strong presumption that the employee's going and coming trip is expected to be no different from that of any other employee with reasonably regular hours and place of work." *Id*. The *Johnson* court stated: "Virtually all special mission exception cases 'involve an element of unusualness in the trip: in terms of time, destination (job site), or duties to be performed.' " *Id*. at 986 (citing David Polin, *Workers' Compensation: Special Mission Exception to Going-and-Coming Rule*, 32 AM.JUR. PROOF OF FACTS 2d 199, 206 (1982)). At least one of these three factors – unusual time, unusual destination (place of work), and unusual work – are present in special mission cases. *Id*. at 987.

Notwithstanding the fact that Thornton performed 95% of his work for Perrone from his home, his travel to the monthly sales meeting at the Perrone warehouse—a place he also visited when he needed to obtain particular supplies for customers—was a normal part of his job duties. He had attended the same meeting held at the same time every month, often at the Perrone warehouse, for

six-and-a-half years. Other salespersons traveled to the same event on the morning of the accident. In contrast to *McLin* and *Roberts*, Thornton was not on a special mission or "specific errand" for Perrone. We note that the special-mission exception might have applied here *if* the sales manager had asked Thornton to pick up donuts on his way to the warehouse and Thornton had performed this errand on his employer's behalf, but those are not the facts of the case before us.

Additionally, there is no evidence that Thornton's job responsibilities already had begun for the day, as Thornton was not on the phone with customers or engaged in any other work on his way to the meeting. And the other exceptions to the general rule that an employee is not in the course and scope of employment when commuting to work also do not apply. *See Knowles*, 113 So.3d at 419. First, Perrone did not provide Thornton's transportation. Second, although Perrone provided Thornton with a gas card for visiting customers, Perrone was not visiting a customer when he traveled to the warehouse for a sales meeting, and Perrone did not reimburse Thornton for his time traveling to that meeting. Third, the operation of the vehicle was not incidental to or in performance of the employee's responsibility, and his conduct at the time of the accident was not so closely connected in time, place, and causation to his employment duties that it constituted a risk of harm attributable to the employer's business. *See Koehl*, 325 So.3d at 1114. On the facts before us, we find the going-and-coming exclusion applies. Thornton was not in the course and scope of his employment at the time of the accident.

CONCLUSION

We find no basis for applying the special-mission exception to the going-and-coming exclusion that is applicable to course-and-scope determinations. Because the trial court correctly determined that Thornton was not in the course and scope of his employment with Perrone at the time of the accident, we affirm

the trial court's ruling granting summary judgment in favor of Perrone and dismissing with prejudice Quatroy's vicarious liability claims against it.

**<u>AFFIRMED</u>**

NICHOLAS J. QUATROY                          NO. 21-CA-732

VERSUS                                       FIFTH CIRCUIT

ANDREW MICHAEL THORNTON,                     COURT OF APPEAL
PERRONE & SONS, L.L.C. AND
ALLSTATE PROPERTY AND                        STATE OF LOUISIANA
CASUALTY INSURANCE COMPANY


**J. WICKER, DISSENTS WITH REASONS**

The majority finds that this case falls under an exception to vicarious liability under the "coming and going rule", the principle that an employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. However, I believe this finding requires a fact determination not suited for summary judgment purposes.[1]

The commuting exception for course and scope was laid out in *Orgeron on Behalf of Orgeron v. McDonald*, 93-1353 (La. 7/5/94), 639 So.2d 224, 226, where the Louisiana Supreme Court found "[b]ecause an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route." The Court, however, stated that there are "shades of gray" in the application of the "coming and going rule" in the situation of the employee who does not work on the employer's premises, have a fixed place of work, or is sent to different work locations: "when an employee is required to check in at a certain place and is then dispatched to the work site for that day, he is generally in the course of employment in the travel between the check in place and the work site, but not between home and the check in place. .

---

[1] The issue of whether or not Thornton was in the course and scope of his employment was raised in both defendants' motion for summary judgment and plaintiff's motion for partial summary judgment. The judgment in this case does not reflect a ruling on plaintiff's motion for partial summary judgment, presumably a denial as the trial court found in favor of the defendants' motion for summary judgment arguing that Thornton was not in the course and scope.

21-CA-732                              1

. .[h]owever, when an employee is instructed to report to different work sites which change periodically, without first reporting to a check in place, there are more variations in the determination of course and scope of employment." *Id*. at 227.

The applicability of this rule to the present case implicates several of these factors and variations, as Thornton does not primarily work on the employer's premises and is sent to different locations as part of his duties as a salesman. To characterize Thornton's action of driving to his employer's warehouse for a sales meeting as "going to work" requires a factual determination of whether Thornton, as a work-from-home employee, was commuting to the office, traveling between two work locations, or on a special errand to serve the employer's purpose. Furthermore, the basis for this rule, that "the employee usually does not begin work until he reaches his employer's premises," does not apply to Thornton who testified at his deposition that he requires only his phone and laptop to work his sales position.

Even if Thornton was considered to be "commuting," exceptions have been held to exist when an employer pays travel expenses, if the trip is employment-connected, the employer had reason to expect it would be performed, or the employee is to be compensated. *Pierce v. Ellis*, 519 So.2d 251, 253 (La. App. 5 Cir. 1988).

Questions of material fact are raised as to whether Thornton's home, as his primary work site, is where he checks in for work each day, and whether the warehouse where the meeting was held is a different work site. The defendants claim that Thornton was commuting from his home to the warehouse as an uncontested fact, but it was not sufficiently established that the warehouse would be considered his office. Evidence was presented that Thornton's home was his office. In his deposition, he testified that he goes to the warehouse sometimes

three to four times a week, some weeks not at all. The defendants did not introduce any evidence of company policies relating to where Thornton is considered to work by Perronne & Sons.

To find that Thornton was "going to work" would require this court to find that an employer's office is an employee's office. This determination should not be made lightly as more employers are allowing employees to work from home following the pandemic without clear policies on where the employee's "office" is located.

Additional issues of material fact were raised regarding whether Thornton was compensated for any expenses for his use of his private vehicle by the provision of a gas credit card or whether Perronne & Sons took an interest in Thornton's transportation sufficient to find that his commute was within the course and scope of his employment.

The evidence presented at summary judgment showed conflict over whether Thornton's attendance at the meeting was compulsory, whether as a commission-based employee he was paid for attending the meeting, or whether the employer-provided gas card should be used to cover the trip to the warehouse. Therefore, in my opinion a finding of summary judgment in the defendants' favor on the basis of the "coming and going" rule is not be appropriate, as the facts of this case do not clearly fall under its application, and would require a determination by the ultimate fact finder.

If the exception for commuting is found to not apply, then a finding of course and scope would require the trier of fact to determine whether the employee's tortious conduct is "of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron,* 639 So.2d at 226-27. Other courts have found summary judgment appropriate where

there are no contested facts relating to: 1) the employer's payment of wages to the employee; 2) the employer's power of control; 3) the employee's duty to perform the particular act; 4) the time, place, and purpose of the act in relation to service of the employer; 5) the relationship between the act and the employer's business; 6) what benefits the employer received from the employee's act; 7) the employee's motivation in performing the act; and 8) the employer's reasonable expectation that the employee would perform the act. *Id.* at 224; *See Woolard v. Atkinson*, 43,322 (La. App. 2 Cir. 7/16/08), 988 So.2d 836, 840; *Thibodeaux v. Geico Cas. Co.*, 17-853 (La. App. 3 Cir. 6/13/18), 249 So.3d 114, *writ denied* (La. 10/29/18).

Upon review of the record, I find that the determination of whether Thornton was within the course and scope of his employment at the time of the accident involves genuine issues of material fact as to many of these factors, which make summary judgment inappropriate at this time in this matter.

SUSAN M. CHEHARDY
CHIEF JUDGE

FREDERICKA H. WICKER
JUDE G. GRAVOIS
MARC E. JOHNSON
ROBERT A. CHAISSON
STEPHEN J. WINDHORST
HANS J. LILJEBERG
JOHN J. MOLAISON, JR.

JUDGES

CURTIS B. PURSELL
CLERK OF COURT

SUSAN S. BUCHHOLZ
INTERIM CHIEF DEPUTY CLERK

LINDA M. WISEMAN
FIRST DEPUTY CLERK

MELISSA C. LEDET
DIRECTOR OF CENTRAL STAFF

(504) 376-1400
(504) 376-1498 FAX



FIFTH CIRCUIT

101 DERBIGNY STREET (70053)

POST OFFICE BOX 489

GRETNA, LOUISIANA 70054

www.fifthcircuit.org

## NOTICE OF JUDGMENT AND CERTIFICATE OF DELIVERY

I CERTIFY THAT A COPY OF THE OPINION IN THE BELOW-NUMBERED MATTER HAS BEEN DELIVERED IN ACCORDANCE WITH **UNIFORM RULES - COURT OF APPEAL, RULE 2-16.4 AND 2-16.5** THIS DAY **SEPTEMBER 28, 2022** TO THE TRIAL JUDGE, CLERK OF COURT, COUNSEL OF RECORD AND ALL PARTIES NOT REPRESENTED BY COUNSEL, AS LISTED BELOW:

**CURTIS B. PURSELL**
CLERK OF COURT

**21-CA-732**

**E-NOTIFIED**
24TH JUDICIAL DISTRICT COURT (CLERK)
HONORABLE DANYELLE M. TAYLOR (DISTRICT JUDGE)
THOMAS E. LOEHN (APPELLANT)          MATTHEW J. HAMILTON (APPELLEE)

**MAILED**
KEVIN T. PHAYER (APPELLEE)              JOHN J. RABALAIS (APPELLEE)
ATTORNEY AT LAW                         MATTHEW D. CRUMHORN (APPELLEE)
3900 NORTH CAUSEWAY BOULEVARD           ATTORNEY AT LAW
SUITE 650                               70779 SOUTH OCHSNER BOULEVARD
METAIRIE, LA 70002                      COVINGTON, LA 70433