639 So.2d 224 (1994)
Ragan ORGERON, Individually and on Behalf of Her Minor Child, Jordan Robert Orgeron
v.
Joseph McDONALD, et al.
No. 93-C-1353.
Supreme Court of Louisiana.
July 5, 1994.
*225 J. Thomas Anderson, Mark W. Smith, Robein, Urann & Lurye, Metairie, L.G. LaPlante, Jr., LaPlante & Martin, Cutoff, for applicant.
Edwin C. Laizer, Joel L. Borrello, E. Gregg Barrios, Adams & Reese, Vincent W. Farrington, Jr., Cornelius, Sartin & Murphy, New Orleans, for respondents.
LEMMON, Justice.[*]
This tort action arises out of a two-vehicle accident which caused the death of plaintiffs' husband and father, Peter Orgeron. Joseph McDonald, an employee of Energy Catering Services (ECS) who was the driver of the second vehicle, was solely at fault in causing the accident. The issue presented is whether McDonald was within the course and scope of his employment with ECS at the time of the accident when he was driving his own vehicle at his expense to the dock where he and ECS's catering crew were to be picked up by ECS's customer and transported to an offshore facility. We conclude that McDonald, under the circumstances of this case where he was intercepted by his employer on his trip home after a fourteen-day shift offshore and ordered to report to a specific dock only a matter of hours from the time of the order, was within the course and scope of his employment at the time of the accident. We therefore hold that ECS is vicariously liable for the damages sustained by the plaintiffs.
ECS was in the business of supplying workers and equipment for catering services to various oil exploration companies at their offshore facilities along the Gulf Coast. In accordance with ECS's contract with its customers, ECS dispatched workers to perform services at places designated by the customers, and the workers were transported to the work location by the customer from ports designated by the customer. ECS paid its employees an hourly wage out of the daily fee it received from its customer.
McDonald, a resident of Mobile, Alabama, had been employed by ECS for five months as a night cook on offshore facilities. His usual schedule was to work offshore for fourteen days and then to have seven days off before beginning another fourteen-day shift, *226 frequently on a different offshore platform.[1] When dispatched by ECS on a job, McDonald used his own vehicle to travel from his home in Mobile to the various ports where he was picked up by ECS's customer. ECS did not provide McDonald with a travel allowance, nor did it reimburse him for travel expenses.
On December 23, 1993, the day before the accident, McDonald returned to port from a fourteen-day shift offshore, having worked from 6:00 p.m. on December 22 to 6:00 a.m. on December 23. He drove to ECS's Houma office to obtain his pay check, planning to continue on to Alabama that night to spend Christmas with his family.
In Houma, ECS's general manager instructed McDonald that he was needed for a seven-day shift, beginning at 4:00 a.m. the next morning, and was to report to the Fourchon dock, approximately sixty miles from Houma. According to McDonald, ECS made arrangements for him to sleep at a motel in Houma, although ECS did not pay the cost of the room. The accident occurred in the early morning hours of December 24, while McDonald was on his way from Houma to the Fourchon dock.
Plaintiffs filed the instant wrongful death action, seeking to hold ECS vicariously liable for McDonald's tort. The trial court rendered judgment in favor of the plaintiffs, finding that McDonald was within the course and scope of his employment at the time of the accident. Reasoning that the factual situation in this case was almost identical to Jackson v. Long, 289 So.2d 205 (La.App. 4th Cir.1974), and noting that "[w]hen a business sends its employees to the four winds for a job it increases the risk to the public," the court held that the employer should bear the risk of torts committed by the employee during travel.[2]
The court of appeal reversed. 618 So.2d 1041. Noting that Jackson was a workers' compensation action, the court of appeal concluded that the trial court in this tort action should have applied a strict interpretation of legal principles regarding an employer's vicarious liability for its employee. 618 So.2d at 1044. Comparing the facts of this case to those in Smith v. Lewis, 499 So.2d 1350 (La.App. 5th Cir.1986), cert. denied, 503 So.2d 476 (La.1987), the court of appeal held that plaintiffs did not bear their burden of proving any peculiar circumstances which would take this case out of the general rule that an employee's traveling from home to work and from work to home is not within the course and scope of employment. 618 So.2d at 1043-1045.
We granted certiorari to review the court of appeal's decision. 623 So.2d 1288.
McDonald was clearly an employee of ECS, who exercised control over his work and determined the details thereof, paying him an hourly wage for performance. The critical inquiry is whether McDonald's activity at the time of the accident was within the course and scope of that employment with ECS so as to make ECS vicariously liable.
An employer is answerable for the damage occasioned by his servant in the exercise of the functions in which the servant is employed. La.Civ.Code art. 2320. In the application of Article 2320, an employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which is within the course and scope of employment. Reed v. House of Decor, Inc., 468 So.2d 1159, 1161 (La.1985); see also W. Page Keeton et al., Prosser and Keeton on the Law of Torts § 70 (5th ed. 1984). Whether an employee is within the course and scope of his employment is a question that is only answerable by general rules, because of the unending contexts in which the question may arise. Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, *227 occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer. W. Page Keeton et al., supra.
An employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm attributable to the employer's business. LeBrane v. Lewis, 292 So.2d 216 (La.1974). In determining whether the employee's conduct is employment-rooted, the court assesses several factors, including the payment of wages by the employer, the employer's power of control, the employee's duty to perform the particular act, the time place and purpose of the act in relation to service of the employer, the relationship between the employee's act and the employer's business, the benefits received by the employer from the act, the motivation of the employee for performing the act, and the reasonable expectation of the employer that the employee would perform the act. Reed v. House of Decor, Inc., 468 So.2d 1159 (La.1985).
The present case involves the application of the principle that an employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Moreover, an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.
The going and coming rule applies nicely when the employee has a fixed place of work, so that his traveling back and forth between his home and his fixed place of work is almost never in the course of employment. Not all employees, however, work on the employer's premises or have a fixed place of work. The dispatching of employees to different work locations gives rise to many "shades of gray" in the otherwise "black and white" applications of the going and coming rule. When an employee is required to check in at a certain place and is then dispatched to the work site for that day, he is generally in the course of employment in the travel between the check in place and the work site, but not between home and the check in place. See generally Arthur Larson, Law of Workman's Compensation § 16 (1993). However, when an employee is instructed to report to different work sites which change periodically, without first reporting to a check in place, there are more variations in the determination of course and scope of employment.
The decision of Jackson v. Long, 289 So.2d 205 (La.App. 4th Cir.1974), relied on by the trial court, was cited in Larson, supra, § 16.03 as an example of the situation where the journey to the place of work may itself be part of the service to the employer. In the context of an employer who was a temporary labor provider, the court held that when the claimant was dispatched to provide services to a client of the employer at a specific place and time, the travel to the place where the services were to be performed was an "integral part" of the claimant's employment.[3] 289 So.2d at 208.
The instant case differs from Jackson, not only because Jackson was a workers' compensation case, but also because the instant case involves a permanent employee who, although dispatched to various places of work, usually traveled from home to a particular port and from the port to home at the beginning and end of each fourteen-day offshore shift. Thus, in most cases, McDonald's *228 infrequent traveling from home to work (or at least to the port where he came under ECS's supervision and control) and from work to home arguably fell under the going and coming rule. Nevertheless, this is not a simple commuter case, since McDonald was not traveling from home to work when this accident occurred.
When McDonald began his employment with ECS, he chose to continue living in Mobile and to drive to the various ports from which he was to leave to go offshore. Although this was a lengthy trip, he only had to travel each way one time during every twenty-one-day period.[4] But, as noted, he was not traveling from home to the port when the accident occurred. Rather he was traveling from his employer's office under special orders from his employer to report to Fourchon by 4:00 a.m., because his employer had intercepted him on his trip from the previous port to his home after completing his fourteen-day shift.
The fact of the special orders did not necessarily cause the trip to Fourchon to fall within the course and scope of his employment. If McDonald had been notified to report to Fourchon for a special assignment two or three days before the time of reporting, then the trip to Fourchon from wherever arguably would have been outside the course of his employment. But the time constraints within which the orders were given for McDonald to report to Fourchon at 4:00 a.m. on December 24, combined with the fact that McDonald had worked all night during the evening of December 22 and the early morning of December 23, dictated that McDonald could not go to Mobile or virtually anywhere else of his choosing, but had to travel from Houma to Fourchon either before or after brief periods of time for relaxation, sleeping and eating, not necessarily in that order. The emergency nature of this assignment, which was principally for the employer's benefit (McDonald would have much preferred to have his seven days off and spend Christmas with his family), greatly heightened the element of the employer's control over McDonald's trip to Fourchon during the few hours between ECS's order to report there and the time he was scheduled to report,[5] whether he made the trip before or after he nourished and rested himself briefly. No matter where McDonald lived (unless it was in Houma where his employer's office was located), he had only a limited amount of time to take care of his human needs and travel to the specified port. The high degree of employer control and employer benefit in the specially ordered trip from Houma to Fourchon under the particular circumstances of this case brought the trip within the course and scope of McDonald's employment.
In summary, although McDonald was not paid wages or expenses for his trip from Houma to Fourchon, his employer was in the business of dispatching workers to ports all over South Louisiana; the employer diverted him from his trip home after his fourteen-day work shift and took substantial control over his activities between the diverting and the time for McDonald's reporting to Fourchon, all for the benefit of ECS's business interest; the time, place and purpose of the travel under the emergency conditions was closely related to ECS's business; the travel under the circumstances was primarily for the benefit of the employer; the motivation of the employee for the travel, although including wages for the additional work hours, was to promote his employer's interest because of the special need; and the employer reasonably expected that he would make the special trip. Under the overall circumstances, the risk of harm for any casualty caused by the employee during the special travel was fairly attributable to the employer.
*229 Accordingly, the judgment of the court of appeal is reversed, and the judgment of the district court is reinstated.[6]
NOTES
[*] Pursuant to Rule IV, Part 2, § 3, Calogero, C.J. was not on the panel which heard and decided this case. See footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] During the five-month period ECS dispatched McDonald to ports at Amelia, Intracoastal City, Venice and Fourchon.
[2] The trial court also noted in its reasons the supplemental finding that McDonald would have been paid for the hours between midnight and 6:00 a.m. on December 24 if he had reached the work site. However, the court of appeal, correctly concluding that this was purely a bookkeeping procedure, held that this finding by the trial court was manifestly erroneous.
[3] The court in Jackson noted that the case did not involve an ordinary employment situation or only one employment contract, but rather involved the claimant's employer contracting with another to dispatch an employee to perform services at a particular time and place, so that traveling to the assigned place of work was an integral part of the claimant's employment contract.
[4] McDonald generally worked fourteen days at the offshore facility and had seven days off.
[5] McDonald testified that after he checked into the motel, he and another ECS employee went out about 7:30 p.m. for drinks and returned to the room about 8:30 p.m. He then called his parents and went to bed about 9:00 p.m. He awoke about 1:00 a.m. and left the motel about 1:30 a.m. to begin his trip to Fourchon.
[6] Because the court of appeal reversed the district court on liability and did not reach the issue of damages, this court upon reinstating the judgment of the district court normally would remand the case to the court of appeal to review damages. However, a remand is unnecessary because the parties notified the court that they have reached an agreement on the amount of damages in the event that this court reverses the court of appeal.