695 So.2d 1384 (1997)
Jude BERTRAND, et al., PlaintiffsAppellants,
v.
Barbara BOLLICH, DefendantAppellant,
American Legion Hospital, et al., DefendantsAppellees.
No. 97-164.
Court of Appeal of Louisiana, Third Circuit.
June 4, 1997.
*1385 Randall Scott Iles, for Jude Bertrand etc.
John William Penny, Jr., Lafayette, for Barbara Bollich, et al.
Nicholas Joseph Sigur, Lafayette, for American Legion Hosp.
Before THIBODEAUX, PETERS and SULLIVAN, JJ.
PETERS, Judge.
This appeal arises out of a tragic accident in which Hilda Stelly died in a collision between a vehicle being driven by Patricia Dugas and a vehicle being driven by Barbara Bollich. Ms. Bollich admitted that she was solely at fault in causing the accident. The issues in this appeal are whether Ms. Bollich was in the course and scope of her employment with American Legion Hospital for purposes of vicarious liability and whether the damages awarded to the children of Ms. Stelly were inadequate.

*1386 DISCUSSION OF THE RECORD
The automobile accident occurred on December 19, 1994. At the time of the accident, Barbara Bollich, a registered nurse, was employed by American Legion Hospital as a home health nurse. Ms. Bollich's typical workday began at 7:30 a.m. and included traveling to see patients in the morning and then going to the hospital in the afternoon to complete the appropriate paperwork for record-keeping and billing purposes. She used her own vehicle to travel and was reimbursed twenty-eight cents per mile for travel from patient to patient. However, she was not reimbursed mileage for travel to and from the hospital. Ms. Bollich's typical day ended at the hospital at 4:00 p.m.
The day of the accident was a typical day, except that before Ms. Bollich could leave the hospital at 4:00 p.m., the sitter of one of her home health patients contacted her and told her the patient needed IV fluids at his home. The sitter also contacted Ms. Bollich's director, who delivered the same message to Ms. Bollich. Upon leaving the hospital, Ms. Bollich brought the IV fluids to the patient's home, which was within a mile of the hospital. After delivering the IV fluids, she proceeded home.
On her way home, Ms. Bollich passed in front of American Legion Hospital, and a few seconds later, the accident occurred. The record reflects that the accident occurred at 4:28 p.m., the time Ms. Bollich had expected to be at home, except for making the delivery to the patient. The accident occurred as Ms. Bollich grabbed for a cup of coffee on her dash, which had "rolled" as she started into a turn. She testified that the first time she saw the vehicle occupied by Ms. Stelly was at impact. Ms. Bollich admitted that she was solely at fault in causing the accident.
Jude Glenn Bertrand and Penny Bertrand Bellard, the adult children of Ms. Stelly, filed suit individually and on behalf of their minor children against Ms. Bollich; Allstate Insurance Company, the automobile liability insurer of Ms. Bollich; and American Legion Hospital. A jury trial was held, and the jury found that Ms. Bollich was not in the course and scope of her employment with the hospital at the time of the accident. The jury awarded special damages of $5,812.18 and past, present, and future mental anguish damages to Mr. Bertrand and Ms. Bellard of $15,000.00 each. The plaintiffs and Ms. Bollich have appealed the judgment signed in accordance with this verdict.

OPINION
The plaintiffs and Ms. Bollich contend that the jury erred in failing to find that American Legion Hospital was vicariously liable for Ms. Bollich's actions. Additionally, the plaintiffs seek an increase in the general damages award.

Vicarious Liability
An employer is answerable for the damage occasioned by its servant in the exercise of the functions in which that servant is employed. La.Civ.Code art. 2320. An employer's vicarious liability for acts not its own extends only to the employee's tortious conduct that is within the course and scope of the employment. Orgeron v. McDonald, 93-1353 (La.7/5/94); 639 So.2d 224. The question of whether or not an employee is within the course and scope of his employment is answerable only by general rules, due to the unending contexts in which the question may arise. Id. In determining whether or not the employee's conduct is employment rooted, the court assesses several factors, including the payment of wages by the employer; the employer's power of control; the employee's duty to perform the act in question; the time, place, and purpose of the act in relation to the employer's service; the relationship between the employee's act and the employer's business; the benefits received by the employer from the act; the employee's motivation for performing the act; and the reasonable expectation of the employer that the employee would perform the act. Id.
In Orgeron, the employer, Energy Catering Services (ECS), was in the business of supplying workers and equipment for catering services to various oil exploration companies at their offshore facilities. ECS employed Joseph McDonald as a night cook. McDonald had just completed a fourteen-day shift offshore and had stopped by ECS's Houma, Louisiana office to pick up his paycheck *1387 before going home to Alabama. At the office, he was instructed to report the next morning at a dock approximately sixty miles from Houma to begin a new seven-day shift. While on his way to the dock the next morning, he was involved in an automobile accident in which the occupant of the other vehicle was killed. The issue in that case was whether McDonald was within the course and scope of his employment at the time of the accident when he was driving his own vehicle at his expense to a dock where he was to be picked up by a customer of ECS and transported to an offshore facility. The supreme court held that McDonald was within the course and scope of his employment at the time of the accident.
The supreme court explained:
The present case involves the application of the principle that an employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Moreover, an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.
The going and coming rule applies nicely when the employee has a fixed place of work, so that his traveling back and forth between his home and his fixed place of work is almost never in the course of employment. Not all employees, however, work on the employer's premises or have a fixed place of work. The dispatching of employees to different work locations gives rise to many "shades of gray" in the otherwise "black and white" applications of the going and coming rule. When an employee is required to check in at a certain place and is then dispatched to the work site for that day, he is generally in the course of employment in the travel between the check in place and the work site, but not between home and the check in place. However, when an employee is instructed to report to different work sites which change periodically, without first reporting to a check in place, there are more variations in the determination of course and scope of employment.
....
... [I]n most cases, McDonald's infrequent traveling from home to work (or at least to the port where he came under ECS's supervision and control) and from work to home arguably fell under the going and coming rule. Nevertheless, this is not a simple commuter case, since McDonald was not traveling from home to work when this accident occurred.
... Rather he was traveling from his employer's office under special orders from his employer to report to Fourchon by 4:00 a.m., because his employer had intercepted him on his trip from the previous port to his home after completing his fourteen-day shift.
The fact of the special orders did not necessarily cause the trip to Fourchon to fall within the course and scope of his employment. If McDonald had been notified to report to Fourchon for a special assignment two or three days before the time of reporting, then the trip to Fourchon from wherever arguably would have been outside the course of his employment. But the time constraints within which the orders were given for McDonald to report to Fourchon at 4:00 a.m. on December 24, combined with the fact that McDonald had worked all night during the evening of December 22 and the early morning of December 23, dictated that McDonald could not go to [Alabama] or virtually anywhere else of his choosing, but had to travel from Houma to Fourchon either before or after brief periods of time for relaxation, sleeping and eating.... The emergency nature of this assignment, which was principally for the employer's benefit... greatly heightened the element of the employer's control over McDonald's trip to Fourchon during the few hours between ECS's order to report there and the time *1388 he was scheduled to report, whether he made the trip before or after he nourished and rested himself briefly. No matter where McDonald lived (unless it was in Houma where his employer's office was located), he had only a limited amount of time to take care of his human needs and travel to the specified port. The high degree of employer control and employer benefit in the specially ordered trip from Houma to Fourchon under the particular circumstances of this case brought the trip within the course and scope of McDonald's employment.
Id. at 5-8, 227-28 (citations omitted) (footnotes omitted).
In the instant case, on the day of the accident, Ms. Bollich had intended to leave work at 4:00 p.m., the time she usually got off of work, and to go directly home. However, after being contacted by the sitter of her home health patient and by her hospital director about the patient's need for IV fluids at his home, she took the IV fluids to the patient in her own car. The patient lived within a mile of the hospital, and Ms. Bollich estimated that she was at the patient's home probably five minutes. She did not return to the hospital but passed the hospital on her way home. The accident occurred at approximately 4:28 p.m., seconds after Ms. Bollich passed the hospital on her way home.
Ms. Bollich did not charge mileage to this patient's home, and the patient was not billed for the visit but was billed for the supplies. Still, the trip was clearly for the benefit of American Legion Hospital because it was in the business of providing home health care, which included providing the necessary supplies to a patient. The delivery was done at the request of Ms. Bollich's director and was part of Ms. Bollich's job duties.
Even though Ms. Bollich had been informed that the IV fluids were needed, the evidence does not show whether the fluids were needed immediately or whether Ms. Bollich was free to bring them at a later time. Even assuming she was specifically ordered to deliver them immediately, Orgeron makes it clear that the fact of special orders alone does not necessarily bring a trip within the course and scope of employment. Rather, the court must consider the time constraints within which the orders were given, the work situation immediately before the orders were given, and the employee's ability to go home or anywhere else of his choosing without immediately complying with the orders. See id. The supreme court in Orgeron explained that the emergency nature of the assignment, which was principally for the benefit of the employer, greatly heightened the element of the employer's control over the employee's trip.
In the instant case, regardless of whether or not the delivery was an emergency, Ms. Bollich's errand for her employer was completed and she was on her way home by the time of the accident, whereas in Orgeron, at the time of the accident the employee was traveling to the dock to perform the task assigned by his employer. American Legion Hospital simply had no control over Ms. Bollich at the time of the accident.
The plaintiffs cite St. Paul Fire & Marine Insurance Co. v. Roberts, 331 So.2d 529 (La.App. 1 Cir.1976), in which the court held that an employee was within the course and scope of his employment at the time of the accident, even though he was returning home at the time after completing a special errand for his employer. The court in that case held that an employee on a special errand pursuant to a specific request or direction of his employer is within the course and scope of his employment from the time of embarking on the errand until his return or deviation from the mission for personal purposes. However, we find that a blanket "special errand" rule is called into question by the supreme court's statement in Orgeron that the special orders alone did not necessarily cause the trip in that case to fall within the course and scope of employment. Indeed, in Orgeron, the supreme court noted that if McDonald had been notified to report to the dock for a special assignment two or three days before the time of reporting, the trip arguably would have been outside the course of the employment.
Thus, in the instant case, since Ms. Bollich had completed her errand, was on her way home, and the emergency nature of the *1389 order was not established, we find that the jury did not err in finding that she was not in the course and scope of her employment at the time of the accident.

Damages
The jury awarded Penny Bertrand Bellard and Jude Glenn Bertrand $15,000.00 each for past, present, and future mental anguish in connection with the death of their mother. They contend that this award is an abuse of the jury's discretion and suggest that an award of at least $150,000.00 each is appropriate.
We agree that the jury abused its discretion it its award of general damages. At the time of the accident, Ms. Stelly was in her late fifties, Penny was thirty-two years old, and Jude was twenty-nine years old. Ms. Stelly was the only parent that Penny and Jude grew up with. Although Ms. Stelly suffered from depression as Penny and Jude were growing up, she obtained relief through medication about ten years prior to the accident, and Penny testified that they "finally had [their] mother back." The record reveals that Ms. Stelly was very involved in the lives of her children and grandchildren, frequently spending time with them and being attentive to their needs. Ms. Stelly went on vacations with Penny, and Penny considered her mother to be her best friend and a confidant. Jude considered his mother to be his friend. He testified that she "was all [he] had," that they were close, and that he sought her advice on almost everything. Additionally, Ms. Stelly was Jude's "fishing buddy." Penny described her mother's death as a "[t]otal loss."
In light of the extremely close, nurturant, and supportive relationship Penny and Jude had with their mother, the only parent with whom they had a relationship, we find that an award of $70,000.00 each was the lowest amount reasonably within the jury's discretion.

DISPOSITION
For the foregoing reasons, we amend the judgment to increase the award of general damages to $70,000.00 each to Penny Bertrand Bellard and Jude Glenn Bertrand. We affirm the judgment in all other respects. We assess costs of this appeal to Barbara Bollich.
AFFIRMED AS AMENDED.
THIBODEAUX, J., concurs but would increase the damage award to $100,000 per Plaintiff.