Judgment rendered November 18, 2020.
Application for rehearing may be filed
within the delay allowed by Art. 2166,
La. C.C.P.

No. 53,615-CA

COURT OF APPEAL
SECOND CIRCUIT
STATE OF LOUISIANA

* * * * *

MONICA D. DURAN                          Appellant

versus

ALLMERICA FINANCIAL BENEFIT
INSURANCE COMPANY, THE MER
ROUGE STATE BANK, LOUISIANA
FARM BUREAU MUTUAL INSURANCE
COMPANY AND GERALD FARRAR          Appellees

* * * * *

Appealed from the
Fourth Judicial District Court for the
Parish of Morehouse, Louisiana
Trial Court No. 2017314

Honorable Alvin Rue Sharp, Judge

* * * * *

| | |
|---|---|
| THE DOWNS LAW FIRM, A.P.C. | Counsel for Appellant |
| By: E. Ross Downs, Jr. | |
| Earl R. Downs, III | |
| Hayden S. Downs | |
| | |
| STREET & STREET | Counsel for Appellant |
| By: Daniel R. Street | |
| | |
| NELSON, ZENTNER, SARTOR | Counsel for Appellee, |
| & SNELLINGS | Allmerica Financial Benefit |
| By: George M. Snellings, IV | Insurance Company and |
| F. Williams Sartor, Jr. | The Mer Rouge State Bank |
| | |
| COTTON, BOLTON, HOYCHICK | Counsel for Appellee, |
| & DOUGHTY, LLP | Louisiana Farm Bureau |
| By: John B. Hoychick | Mutual Insurance Company |

MURPHY, ROGERS, SLOSS,  Counsel for Appellee,
GAMBEL & TOMPKINS  Gerald Farrar
By: Ronald J. White

MASON L. OSWALT  Counsel for Appellee,
Gerald Farrar

\* \* \* \* \*

Before GARRETT, COX, and THOMPSON, JJ.

**COX, J.**

The suit arises out of the Fourth Judicial District Court, Morehouse Parish, Louisiana. Monica Duran filed suit after a vehicle accident against Allmerica Financial Benefit Insurance Company, The Mer Rouge State Bank ("MRSB"), Louisiana Farm Bureau Mutual Insurance Company, and Gerald Farrar. Ms. Duran appeals the trial court's granting of two partial motions for summary judgment in favor of MRSB and dismissal of her claims against MRSB. For the following reasons we affirm the trial court's judgment granting MRSB's partial motions for summary judgment on the issues of vicarious liability and punitive damages and respectfully reverse the trial court's judgment granting MRSB's partial motion for summary judgment on the issue of negligent entrustment.

## FACTS

For the purpose of this review of MRSB's motion for summary judgment, the following facts are not in dispute. On October 26, 2016, Mr. Farrar, President of MRSB, was operating a 2015 Chevrolet Silverado, owned by MRSB, on US Highway 425. As Mr. Farrar was traveling north on the highway, the right front wheel of the vehicle became dislodged and came to rest in the northbound lane. Ms. Duran and her guest passenger, Brandon Burton, were traveling north on US Highway 425 when Ms. Duran's vehicle struck Mr. Farrar's dislodged tire. Mr. Farrar was charged by the investigating officer with driving while intoxicated.

On July 25, 2017, Ms. Duran filed a petition for damages against Allmerica Financial, MRSB, Louisiana Farm Bureau, and Mr. Farrar. Allmerica Financial provided general liability coverage to MRSB and Mr.

Farrar. Louisiana Farm Bureau provided a general liability policy with uninsured/underinsured motorist protection to Ms. Duran.

Ms. Duran claimed that Mr. Farrar did nothing to warn motorists of the tire or remove the tire from the travel lane. She pointed out that at the time of the accident, there was total darkness in the area. Ms. Duran was driving her 2000 Toyota Tacoma north on U.S. Hwy 425 and came upon the tire in the middle of the road. She stated that she could not see the dark tire on the dark asphalt and struck the tire. She claimed there was a "tremendous impact" after hitting the tire. Her injuries include permanent brain damage, closed head injury, cognitive deficits, post-concussion headaches, injuries to her lumbar and cervical spines, as well as the disc and muscles, depression, and other injuries.

Ms. Duran alleged that Mr. Farrar's wanton and reckless disregard for the safety of others was the cause in fact of her injuries and MRSB is responsible under the theory of *respondeat superior*. She also alleged that the crash was caused by the independent fault of MRSB for negligently entrusting the vehicle to Mr. Farrar, who it knew or should have known was not competent to safely operate the vehicle.

MRSB, Mr. Farrar, and Allmerica Financial filed their answer and denied the allegations. On January 14, 2019, MRSB filed a memorandum in support of their motion for judgment on the pleadings and/or motion for partial summary judgment. The issue raised by MRSB in its motion for summary judgment is whether it can be liable for exemplary damages, under La. C.C. art. 2315.4 and theories of vicarious liabilities and/or negligent

2

entrustment. MRSB also filed a motion for partial summary judgment as to punitive damages.

Mr. Farrar's deposition transcript is attached to MRSB's motion. He stated that he had a couple of accidents driving home from hunting land while in a bank-owned vehicle. He stated, "A couple because Everglades is barely a pig tail… You slide off the road there on Everglades once it gets wet. I've had to pull several people out." He stated that when he slid off of the road, the police were not called because there was no accident and his brother was able to pull him out of the ditch. He stated that he had one other incident in a bank-owned vehicle before October 2016, which was when he hit a "corduroyed spot" in the gravel and hit a tree. He described a "corduroy spot" as a series of bumps in a gravel road, like a washboard. Mr. Farrar stated that the truck was totaled, the sheriff's office responded to the accident, sobriety tests were not performed, a police report was filed, and he informed at least one board member of the accident.

Mr. Farrar stated that in June of 2016, the vehicle had about 50 miles on it and he took it to a dealership because the front right hub was making noise. The dealership fixed the bearings that had gone out in the front right hub. On October 22, 2016, Mr. Farrar stopped at a tire center with a flat. When the technician at the tire center plugged the hole in the tire, he noticed the axle nut had come loose so he fixed that as well. Mr. Farrar did not take the vehicle for a follow-up inspection at the dealership before the accident on October 26, 2016.

Mr. Farrar stated that he was prescribed Lorazepam in the spring of 2016 for anxiety and took it on the day of the accident. He stated that on the

day of the accident, he had a cocktail in a "short tumbler" before he left his parents' house. He stated that his cocktail contained one and one-half or two ounces of bourbon, water, and ice. He stated that he may have one drink before driving, but will not drive if he has more than one drink. Mr. Farrar admitted that it was a violation of an unwritten bank policy for him to be driving the vehicle after having one drink. He stated that he was on vacation from the bank the week of the accident, and he was preparing for a hunting trip out of town when he needed to go by MRSB to pick up the travel itinerary for the trip before meeting his friend. He stated that on his way to MRSB, about 6:30 p.m., the right front wheel came off of his vehicle, causing him to hit a guardrail. He did not recall if there were any noises or indications that the wheel was about to come off.

Mr. Farrar was taken by ambulance to the hospital and was found to have a right ankle fracture. He stated that a state trooper came to the hospital about two hours after the accident and asked him for a sobriety test. Mr. Farrar stated he refused the test because he was already on an IV drip with pain medicine. He did not recall having a conversation about his alcohol consumption with an officer at the scene of the accident. Mr. Farrar's medical records note that he admitted to having a beer that evening.

Mr. Farrar stated that he suggested to MRSB's Board of Directors ("the Board") that MRSB did not need to continue to provide vehicles to employees because there was already insurance coverage in place for employees driving their own vehicles to and from meetings and training.

Louisiana State Trooper Patrick Morris investigated the October 26, 2016 accident and arrested Mr. Farrar for DWI. He stated in his deposition

that he was notified of the accident at 7:28 p.m. He stated that he did not believe that Mr. Farrar's wheel came off and caused him to hit a bridge. His investigation revealed that the bridge rail tore the wheel off of the hub assembly and brake lines. He stated there would have been skid marks on the road if the wheel had fallen off and the brake hub had hit the ground, but the road was clear until Mr. Farrar hit the guardrail.

Trooper Morris stated he could smell alcohol on Mr. Farrar at the scene, but did not administer a sobriety test at the scene because Mr. Farrar was injured. He measured the distance from the impact with the guardrail to Mr. Farrar's stopped vehicle, which was 880 feet. Trooper Morris administered a sobriety test on Mr. Farrar at the hospital after Mr. Farrar admitted to having a few drinks earlier in the day. Because of Mr. Farrar's injury, the only field sobriety test he could administer was the horizontal gaze nystagmus test, which Mr. Farrar did not pass.

Holly Farrar, Mr. Farrar's wife, stated in her deposition that there was a time when she was concerned about Mr. Farrar's alcohol consumption. She stated that she is not a drinker so any type of drinking is too much to her. She recalled speaking with John Shackelford, a member of the Board, about her marriage and concerns about Mr. Farrar's drinking. Mrs. Farrar was not aware of her husband's DWI charge or his alcohol test result of 0.346.

Phillip McCready, vice president and a Board member of MRSB, stated in his deposition that he did not know of any of the officers or directors of MRSB consuming alcohol while on the job. He stated that he had heard a general rumor in the community that Mr. Farrar had a problem

5

with alcohol.  Pamela Farrar Turner, Mr. Farrar's first cousin and MRSB vice president, recalled Mr. McCready asking her once if she thought Mr. Farrar was drinking, and she told him she did not know.

Mr. Shackelford, a board member of MRSB, stated in his deposition that he had a conversation with Mrs. Farrar, who was concerned about Mr. Farrar's drinking, but when he spoke with her again later, she was no longer concerned about it.  He stated that before the October 26, 2016 accident, he had no knowledge of Mr. Farrar ever driving the bank-owned vehicle while intoxicated.  The remaining board members stated in their depositions that they were unaware of Mr. Farrar having a drinking problem.

An expert report from an Accident Reconstruction Specialist states that Mr. Farrar failed to maintain his vehicle in the lane of travel, struck the guardrail, and the impact caused the wheel to be torn off of the vehicle.

Ms. Duran filed a supplemental, amended, and restated petition for damages and stated that both MRSB and Mr. Farrar were the operator of the vehicle; both were legally intoxicated; both were wanton and reckless in their disregard for others; and both drove 880 feet after the collision and did not turn on the hazard lights.  Ms. Duran requested compensatory and punitive damages to punish the defendants.  MRSB responded and again argued that they were not liable under Louisiana law for the damages.

On July 13, 2019, the trial court judge granted MRSB's partial motion for summary judgment.  The district court found that Ms. Duran could not recover punitive damages under the facts of this case against MRSB under La. C.C. art. 2315.4 or as a matter of law based on the alleged acts of its

6

employee. The district court dismissed Ms. Duran's claim against MRSB for punitive damages.

MRSB then filed a motion for partial summary judgment on the issue of negligent entrustment. Both parties filed memos arguing their respective side of the issues of negligent entrustment and vicarious liability. On October 8, 2019, the district court granted MRSB's motion for partial summary judgment. The district court stated, "Essentially (among other things), the president was on vacation at the time and was not doing banking business… [T]he bank did not know (neither actually nor constructively) that the president would drink to excess and drive a company car." MRSB was dismissed with prejudice from this civil action. Ms. Duran now appeals those judgments.

## DISCUSSION

*Negligent Entrustment*

Ms. Duran first argues that the trial court erred in granting MRSB's motion for summary judgment on the issue of negligent entrustment. She argues that MRSB had actual knowledge that Mr. Farrar was a habitual abuser of alcohol and was known to drive his bank-owned vehicle while intoxicated and/or under the influence of alcohol for seven years prior to the subject crash.

MRSB argues that a finding of negligent entrustment requires a determination that MRSB knew, or should have known, that Mr. Farrar would drink in legal excess and drive a company vehicle. It asserts that just because a person or entity knows that an individual drinks alcohol does not mean that the person or entity knows or should have known that the

7

individual would drive while legally intoxicated. It argues that the trial court correctly granted summary judgment on the issue of negligent entrustment.

A *de novo* standard of review is required when an appellate court considers rulings on motions for summary judgment, and the appellate court uses the same criteria that governed the district court's determination of whether summary judgment was appropriate. *Green v. Brookshire Grocery Co.*, 53,066 (La. App. 2 Cir. 9/25/19), 280 So. 3d 1256. A court must grant a motion for summary judgment if the motion, memorandum, and supporting documents show that there is no genuine issue as to a material fact and that the mover is entitled to judgment as a matter of law. La. C.C.P. art. 966.

A fact is material if it potentially ensures or precludes recovery, affects a litigant's ultimate success, or determines the outcome of the legal dispute. *Green v. Brookshire Grocery Co., supra.* A genuine issue of material fact is one as to which reasonable persons could disagree; if reasonable persons could reach only one conclusion, there is no need for trial on that issue and summary judgment is appropriate. *Jackson v. City of New Orleans*, 12-2742 (La. 1/28/14), 144 So. 3d 876, *cert. denied*, 574 U.S. 869, 135 S. Ct. 197, 190 L. Ed. 2d 130 (2014); *Green v. Brookshire Grocery Co., supra*. In determining whether an issue is genuine, a court should not consider the merits, make credibility determinations, evaluate testimony, or weigh evidence. *Green v. Brookshire Grocery Co., supra*.

Ms. Duran seeks review of the trial court's granting of MRSB's motion for summary judgment on the issue of negligent entrustment. Generally, an owner of a vehicle is not liable for damages which occur when

another is operating the vehicle. *Oaks v. Dupuy*, 32,070, (La. App. 2 Cir. 8/18/99), 740 So. 2d 263, *writ not considered*, 99-2729 (La. 11/24/99), 750 So. 2d 993. Exceptions to this rule occur when the driver is on a mission for the owner of the vehicle, when the driver is an agent or employee of the owner, and when the owner is himself negligent in entrusting the vehicle to an incompetent driver. *Id.* Under the negligent entrustment theory, the lender of a vehicle is not responsible for the negligence of the borrower unless he knew or should have known that the borrower was physically or mentally incompetent to drive. *Id.* However, absent a reason which would place the owner on notice of the driver's disability or incompetence, there is no duty to make an inquiry into one's driving habits or record. *Matthews v. Arkla Lubricants Inc.*, 32,121 (La. App. 2 Cir. 8/18/99), 740 So. 2d 787. The issue of knowledge is often unsuitable for summary judgment disposition. *Oaks v. Dupuy supra* .

In the case before us, it remains a genuine issue of material fact whether MRSB knew or should have known of Mr. Farrar's drinking problem when entrusting him with a bank-owned vehicle. The Board provided general oversight of the bank, but it is unclear what oversight the Board exercised over Mr. Farrar. However, the Board was aware of Mr. Farrar having a bank-owned vehicle to drive for both personal and business purposes. Based on the deposition testimony, Mrs. Farrar made Mr. Shackelford, a board member, aware of her concerns about her husband's drinking. Although Mr. Shackelford could not recall the details, he stated that he spoke with Mrs. Farrar before the October 26, 2016 accident and she was concerned about Mr. Farrar's drinking. He stated that he had a second

9

conversation with her and she stated "she thought he was doing better" and "she thought she had it under control." Mr. Shackelford stated that since the accident, he has paid close attention to Mr. Farrar and is not aware of Mr. Farrar drinking.

Mr. McCready, also a board member, was aware of the small-town rumors that Mr. Farrar had a problem with alcohol. He stated that the thought had crossed his mind that Mr. Farrar had a drinking problem. As well as being a board member, Mr. McCready is a vice president at MRSB, and Mr. Farrar, as president, is his boss. He stated he was unaware of any policy or procedure to address any misconduct of the bank president. The board members' deposition testimonies reveal that MRSB did not have a written vehicle policy or drugs and alcohol policy at the time of the October 26, 2016 accident.

Based on the deposition testimonies of the Board members, there are genuine issues about whether the Board should have known about Mr. Farrar's possible drinking problem. There is also a genuine issue of fact regarding whether Mr. Farrar's previous accidents in a bank-owned vehicle, coupled with the rumors and conversations with his wife that he may have a drinking problem, put the Board on notice that it should have investigated Mr. Farrar's competence to drive. These factual findings are not properly determined on a motion for summary judgment. For these reasons, we respectfully reverse the trial court's judgment granting MRSB's motion for summary judgment on the issue of negligent entrustment and reinstate Ms. Duran's claim against MRSB for negligent entrustment. We make no

judgment on whether Ms. Duran will be successful in proving her case of negligent entrustment.

*Vicarious Liability*

Ms. Duran argues the trial court erred in granting MRSB's motion for summary judgment on the issue of vicarious liability. She states there is a jurisprudential presumption that an employee driving an employer's vehicle at the time of a collision is presumed to be within the course and scope of his employment. Ms. Duran points out that Mr. Farrar was the "top human functionary" of MRSB; the top person in charge and at all times subject to his own "control;" had a company car; kept his own hours; worked late and at odd times; always did some work when he went to the office; and, was on his way to the office at the time the accident occurred. For these reasons, she argues the trial court's judgment on the issue of vicarious liability should be reversed.

MRSB argues that the trial court correctly found that Farrar was not acting within the course and scope of his employment with MRSB at the time of the accident. It points out that the accident occurred when Mr. Farrar was not conducting any business for MRSB, but while he was on vacation and had been for several days. It states that it is undisputed that Mr. Farrar was driving to MRSB at the time of accident, but he was doing so for purely personal reasons—to pick up vacation-related documents. Defendants contend that this proves that he was not motivated to serve the master's business, as required by law.

An employer's vicarious liability for conduct not his own extends only to the employee's tortious conduct which occurs within the course and

11

scope of that employment. *Orgeron v. McDonald*, 93–1353 (La.7/5/94), 639 So. 2d 224; *Winzer v. Richards*, 50,330 (La. App. 2 Cir. 1/13/16), 185 So. 3d 876. The course of employment refers to time and place; scope refers to the employment-related risk of injury. *Benoit v. Capitol Mfg. Co.*, 617 So. 2d 477 (La.1993); *Winzer v. Richards, supra*.

An employer is responsible for the negligent acts of its employee when the conduct is so closely connected in time, place, and causation to the employment duties of the employee that it constitutes a risk of harm fairly attributable to the employer's business. *Winzer v. Richards, supra*. Factors useful in determining whether the employee's act was employment-related include (1) the payment of wages by the employer; (2) the employer's power of control; (3) the employee's duty to perform the act in question; (4) the time, place, and purpose of the act in relation to the employment; (5) the relationship between the employee's act and the employer's business; (6) the benefits received by the employer from the act; (7) the employee's motivation for performing the act; and (8) the employer's reasonable expectation that the employee would perform the act. *Orgeron v. McDonald, supra*; *Winzer v. Richards, supra*.

The general rule is that an employee, in going to and from work, is not considered as acting within the course and scope of his employment so as to render the employer liable to third persons for the employee's negligence. *Winzer v. Richards, supra; Alford v. State Farm Auto. Ins. Co.*, 31,763 (La. App. 2d Cir. 5/5/99), 734 So. 2d 1253, *writs denied*, 99-1435, 99-1595 (La. 9/3/99), 747 So. 2d 544. An exception to this general rule may apply when an employer provides the transportation used by the employee to go to and

from work, the employer provides expenses or wages for the time spent traveling in the vehicle, or the operation of the vehicle is incidental to the performance of some employment responsibility. *Winzer v. Richards, supra.*

We agree with the trial court that MRSB is not vicariously liable for the alleged tortious conduct of Mr. Farrar. In the case before us, Mr. Farrar was given a bank-owned vehicle for both personal and business use, not for the primary purpose of traveling to and from work. At the time of the accident, Mr. Farrar was traveling to the office while on a scheduled vacation for purely personal reasons—to pick up personal travel documents. Mr. Gary Cater stated in his deposition that he was planning to travel with Mr. Farrar, the trip was a personal hunting trip, which they had taken before, and not associated with any banking business.

The factors useful in determining whether the employee's act was employment related are all in favor of MRSB: (1) Mr. Farrar had taken paid vacation time off of work the week of the accident; (2) he was not under the control of MRSB that week; (3) Mr. Farrar owed no duty to MRSB while picking up those personal documents; (4) Mr. Farrar was travelling to the bank after hours, while on vacation, for reasons unrelated to MRSB business; (5) there is no relationship between Mr. Farrar's drive to the bank and MRSB business; (6) MRSB did not benefit from Mr. Farrar driving to the bank that evening; (7) Mr. Farrar was motivated by his need to pick up his personal travel documents; (8) MRSB had no reasonable expectation that Mr. Farrar would be traveling to the office for personal reasons.

For these reasons, we affirm the trial court's judgment granting MRSB's motion for summary judgment on the issue of vicarious liability.

*Punitive Damages*

Ms. Duran argues that MRSB should be vicariously liable for punitive damages under La. C.C. art. 2315.4. However, because we agree with the trial court that MRSB is not vicariously liable, we do not reach the issue of whether punitive damages may be assessed against an employer under the theory of vicarious liability. We affirm the trial court's granting of MRSB's motion for summary judgment on the issue of punitive damages.

## CONCLUSION

For the reasons stated above, the trial court's judgment granting MRSB's partial motions for summary judgment on the issues of vicarious liability and punitive damages are affirmed. The trial court's judgment granting MRSB's partial motion for summary judgment on the issue of negligent entrustment is respectfully reversed. Each party bears its own costs associated with this appeal.

**AFFIRMED IN PART AND REVERSED IN PART.**