| EVA JAMES IRVING | * | NO. 2024-CA-0835 |
|---|---|---|
| VERSUS | * | COURT OF APPEAL |
| OUR LADY OF WISDOM HEALTH CENTER | * | FOURTH CIRCUIT |
| | * | STATE OF LOUISIANA |

* * * * * * *

APPEAL FROM
THE OFFICE OF WORKERS' COMPENSATION
NO. 21-05486, DISTRICT "08"
Honorable Catrice Johnson-Reid, The Office of Workers' Compensation
* * * * * *
**Judge Rachael D. Johnson**
* * * * * *

(Court composed of Chief Judge Roland L. Belsome, Judge Rosemary Ledet, Judge Rachael D. Johnson)

Leonard Joseph Cline, Jr.
Lionel J. Favret, III
LEONARD J. CLINE, PLC
3021 35th Street, Suite A
Metairie, LA 70001

      COUNSEL FOR PLAINTIFF/APPELLANT

John W. Ellinghausen
LAW OFFICE OF JOHN W. ELLINGHAUSEN, L.L.C.
639 Loyola Avenue
Suite 1850
New Orleans, LA 70113

      COUNSEL FOR DEFENDANT/APPELLEE

**REVERSED AND REMANDED**
**JUNE 4, 2025**

Appellant, plaintiff Eva James Irving, seeks review of the August 19, 2020 Office of Workers' Compensation's ("OWC") judgment, as amended on March 27, 2025, granting Appellee, defendant Our Lady of Wisdom Health Center's ("OLW"), motion for summary judgment and dismissing Mrs. Irving's claims with prejudice.  Finding that a genuine issue of material fact exists as to whether Mrs. Irving was in the course and scope of her employment when she was injured driving to work-mandated COVID-19 testing on her day off, we reverse the OWC's judgment and remand for further proceedings.

## Facts and Procedural History

The instant appeal involves whether Mrs. Irving sustained a work-related injury during her employment with OLW, a senior citizen health care center in New Orleans. The facts of this matter are not in dispute. Mrs. Irving is a certified nursing assistant who was employed by OLW for 12 years. She was an OLW employee when the COVID-19 pandemic began in 2020.

In 2020, Louisiana Governor John Bel Edwards issued a series of executive orders during the COVID-19 pandemic, recognizing that Louisiana was in a public health crisis and requiring health care facilities like OLW to test all of its

1

employees for COVID-19. Additionally, OLW maintains that it was required to comply with Centers for Medicare & Medicaid Services' regulations requiring OLW to test its employees regularly for COVID-19. In response, OLW mandated its employees submit to weekly COVID-19 testing on its premises on Tuesdays, regardless of whether employees were schedule to work that day. The failure of an OLW employee to report for COVID-19 testing barred the employee from reporting to work on his or her next scheduled work-day.

OLW did not provide transportation for employees to report for COVID-19 testing. Likewise, OLW employees did not receive mileage reimbursement for work and COVID-19 testing commutes. Mrs. Irving was not required to participate in COVID-19 testing prior to the COVID-19 pandemic.[1] It is unknown whether Mrs. Irving was required to submit to weekly testing for any other virus or disease as a condition of her employment with OLW prior to the COVID-19 pandemic.

On Tuesday, September 1, 2020, Mrs. Irving drove from her St. James Parish home in her personal vehicle to OLW for mandated COVID-19 testing. It was her day off. Mrs. Irving was injured in a motor vehicle accident while en route to OLW.

Subsequently, Mrs. Irving, filed a Disputed Claim for Compensation to recover workers' compensation benefits from OLW. OLW later moved for summary judgment, asserting that Mrs. Irving was not in the course and scope of her employment at the time of her accident because she was traveling to work, and, therefore, is ineligible for workers' compensation benefits.

---

[1] Governor John Bel Edwards declared a public health emergency in connection with the COVID-19 pandemic on March 11, 2020.

The hearing on OLW's Motion for Summary judgment was held on July 20, 2022. At the close of the hearing, the OWC ordered the parties to submit post-hearing supplemental briefing on the application of *Fasullo v. Finley*, 00-2659 (La. App. 4 Cir. 2/21/2001), 782 So.2d 76, and took the matter under advisement. On August 19, 2022, the OWC rendered judgment granting OLW's motion and issued Written Reasons for Judgment, wherein the OWC opined that at the time of Mrs. Irving' accident, she was not traveling in the course and scope of her employment:

> In the instant case, claimant, Eva James Irving, was traveling to her place of employment from her home and in her personal vehicle at the time of the motor vehicle accident. Claimant, Eva James Irving, was traveling to work to take COVID-19 testing, which was a mandatory provision of her employment at Our Lady of Wisdom Health Care Center. She was not paid any additional wages or reimbursed for mileage. The Court finds that there is no genuine issue of material fact. The motor vehicle accident occurred when claimant, Eva James Irving, was traveling from her home in St. Charles Parish to the employer's premises in Orleans Parish. Travel to work on September 1, 2020 was a mandatory requirement of her employment. Claimant, Eva James Irving, was not paid for her travel time and was not reimbursed for her travel. An accident which occurs while an employee is traveling to and from work is not in the course and scope of employment unless the employer has an interest in that travel. The Court agrees that there exists no genuine issues [sic] of material fact that requires adjudication by this court.

This timely appeal followed. Mrs. Irving's sole assignment of error is that the OWC committed an error of fact and law in holding that she was not within the course and scope of her employment with OLW at the time of her injury.[2]

---

[2] On March 26, 2025, this Court ordered the district court to amend its August 19, 2020 judgment because it lacked the proper decretal language. The district court subsequently complied with this Court's order and rendered a March 27, 2025 amended judgment, stating that OLW's motion for summary judgment was granted and adding that Mrs. Irving's case was dismissed with prejudice.

**Standard of Review**

"An appellate court reviews an OWC's decision to grant a motion for summary judgment *de novo*, using the same criteria that govern the OWC's consideration of whether summary judgment is appropriate. *Allen v. Blind Pelican*, 17-0833, p. 2 (La. App. 4 Cir. 3/14/18), 239 So.3d 376, 377-78 (quoting *Abney v. Gates Unlimited, L.L.C.*, 11-1242, p. 4 (La. App. 1 Cir. 5/4/12), 92 So.3d 1068, 1070).

Louisiana Code Civil Procedure article 966 is the governing statute on summary judgment procedure. "[A] motion for summary judgment shall be granted if the motion, memorandum, and supporting documents show that there is no genuine issue of material fact and that the mover is entitled to judgment as a matter of law." La. Code Civ. Proc. art. 966(A)(3). The mover on a motion for summary judgment bears the burden of proof; however, if the mover will not bear the burden of proof at trial, the mover is not required "to negate all essential elements of the adverse party's claim, action, or defense, but rather to point out to the court the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense." La. Code Civ. Proc. art. 966 (D)(1). If the mover establishes the absence of factual support for one or more elements essential to the adverse party's claim, action, or defense, the burden shifts to the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. *Id.*

"[F]actual inferences reasonably drawn from the evidence must be construed in favor of the party opposing the motion and all doubts must be resolved in the opponent's favor." *Quinn v. RISO Investments, Inc.*, 03-0903, p. 3 (La. App. 4 Cir. 3/3/04), 869 So.2d 922, 926. In "determining whether an issue is genuine, courts

4

cannot consider the merits, make credibility determinations, evaluate testimony, or weigh evidence." *Id.*, 03-0903, pp. 3-4, 869 So.2d at 926.

**Discussion**

In the instant matter, we conduct a *de novo* review of whether there is a genuine issue of material fact regarding whether Mrs. Irving's accident during her commute to OLW's premises for OLW-mandated COVID-19 testing occurred during the course and scope of her employment.

OLW asserts that pursuant to Louisiana law Mrs. Irving's accident falls under the going-and-coming rule, contending that her commute to her fixed place of employment falls outside of the course and scope of her employment and, therefore, precludes her recovery of workers' compensation benefits. OLW avers that Mrs. Irving's lengthy commute from her St. James Parish home is irrelevant as the location of her residence is out of OLW's control. Thus, OLW asserts the OWC reasoned that Mrs. Irving's workers' compensation claim is barred under the going and coming rule. Lastly, it maintains that Mrs. Irving did not establish that her travel to work for COVID-19 testing was exempt from the going and coming rule or that the special mission exception is applicable here.[3]

Mrs. Irving contends that she was on a special mission for OLW, when she traveled to work on her day off for COVID-19 testing, which OLW required as a condition of her employment after she was hired. Consequently, she argues that she is entitled to workers' compensation and there is a genuine issue of material fact as to whether she is entitled to workers' compensation benefits.

---

[3] While OLW uses the term "work-related errand," it is synonymous with "special mission" as discussed herein.

5

OLW asserts that Louisiana law and jurisprudence does not support Mrs. Irving's argument that her weekly reporting to their fixed workplace for COVID-19 testing constitutes a "special mission" because the jurisprudential conditions required to form an exception to the going and coming rule are not satisfied here. We disagree.

"If an employee...receives personal injury by accident arising out of and in the course of his employment, his employer shall pay compensation in the amounts, on the conditions, and to the person or persons hereinafter designated." La. Rev. Stat. 23:1031(A). "Generally speaking, an employee's conduct is within the course and scope of his employment if the conduct is of the kind that he is employed to perform, occurs substantially within the authorized limits of time and space, and is activated at least in part by a purpose to serve the employer." *Orgeron on Behalf of Orgeron v. McDonald*, 93-1353, p. 4 (La. 7/5/94), 639 So.2d 224, 226-27 (citing W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 70 (5th ed. 1984)). "Whether an employee is within the course and scope of his employment is a question that is only answerable by general rules, because of the unending contexts in which the question may arise." *Orgeron*, 93-1353, p. 4, 639 So.2d at 226. Consequently, courts determining whether an employee was in the course and scope of his or her employment must review the facts on a case-by-case basis. *Johnson v. Transit Mgmt, of Se. La.*, 17-0793, p. 8 (La. App. 4 Cir. 02/28/18), 239 So.3d 973, 979 (quoting Thomas C. Galligan, Jr., *A Primer on the Patterns of Louisiana Workplace Torts*, 55 LA L. REV. 71, 73 (1994)).

In *Orgeron,* the Supreme Court developed the following non-exclusive factors Courts should assess in determining whether an employee's conduct is employment-rooted, such as: payment of wages by the employer; the employer's

power of control; the employee's duty to perform the particular act; the time place and purpose of the act in relation to service of the employer; the relationship between the employee's act and the employer's business; the benefits received by the employer from the act; the motivation of the employee for performing the act; and the reasonable expectation of the employer that the employee would perform the act. *Orgeron*, 93-1353, pp. 4-5, 639 So.2d at 227 (citing *Reed v. House of Decor, Inc.*, 468 So.2d 1159 (La.1985)).

The *Orgeron* Court further reasoned than an employee's work commute from home generally falls outside of the scope of his or her employment:

> [The] principle that an employee who is traveling from home to work or returning from work to home is generally not within the course and scope of his employment. Because an employee usually does not begin work until he reaches his employer's premises, his going to and coming from work is generally considered outside the course of his employment unless he has a duty to perform en route. Moreover, an employee's place of residence is a personal decision not directly controlled by the employer, and treating commuting time as part of the determination of course and scope of employment would remove manageable boundaries from the determination.

*Orgeron,* 93-1353, p. 5, 639 So.2d at 227. This principle or rule is known as the going and coming rule. "The going and coming rule applies nicely when the employee has a fixed place of work, so that his traveling back and forth between his home and his fixed place of work is almost never in the course of employment." *Id*.

7

Subsequently, the Louisiana Supreme Court, in *McLin, v. Industrial Specialty Contractors, Inc.*, 02-1539 (La. 7/2/03), 851 So.2d 1135, a workers' compensation case, set forth seven exceptions to the going-and-coming rule:[4]

> (1) If the accident happened on the employer's premises;
>
> (2) If the employee was deemed to be on a specific mission for the employer, such as making a trip in the interest of his employer's business or pursuant to his employer's order;
>
> (3) If the employer had interested himself in the transportation of the employee as an incident to the employment agreement either by contractually providing transportation or reimbursing the employee for his travel expenses;
>
> (4) If the employee was doing work for his employer under the circumstances where the employer's consent could be fairly implied;
>
> (5) If the employee was hurt while traveling to and from one work site to another;
>
> (6) If the employee was injured in an area immediately adjacent to his place of employment and that area contained a distinct travel risk to the employee (the "threshold doctrine"); and
>
> (7) If the operation of a motor vehicle was the performance of one of the duties of the employment of the employee.

02-1539 at p. 5, n. 1, 851 So.2d at 1140.

At issue in the case *sub judice* is the second exception, known as the special mission exception that is defined as:

> When an employee, having identifiable time and space limits on his employment, makes an off-premises journey which would normally not be covered under the usual

---

[4] See also *Johnson v. Transit Mgmt. of Se. Louisiana, Inc.*, 17-0793, p. 11 (La. App. 4 Cir. 2/28/18), 239 So.3d 973, 980 (holding "[i]n both the tort and workers' compensation contexts, the jurisprudence has recognized the applicability of the going-and-coming rule and multiple exceptions to the rule, including the special errand [special mission] exception.").

8

> going and coming rule, the journey may be brought within the course and scope of employment by the fact that the trouble and time of making the journey, or special inconvenience, hazard, or urgency of making it in the particular circumstances, is itself sufficiently substantial to be viewed as an integral part of the service itself.

*McLin*, 02-1539, p. 6, 851 So.2d at 1141 (quoting 1 Arthur Larson & Lex K. Larson, *Larson's Workers' Compensation Law* § 14.05 (2002) ("*Larson*")).[5] The special mission exception, however, is not to be blanketly applied:

> This court has recognized that the Supreme Court, in *Orgeron*, calls into question the continued viability of "a blanket 'special errand' rule'" by its statement that "special orders alone do not necessarily cause a trip to fall within the course and scope of employment."

*Johnson,* 17-0793, p. 16, n.11, 239 So.3d at 984 (quoting *Fasullo v. Finley*, 00-2659, p. 8 (La. App. 4 Cir. 2/21/01), 782 So.2d 76., 82)). "In order to bring the employee into the course and scope of employment, the Supreme Court in *Orgeron* required not only a special order but also other exceptional circumstances. *Id.*, 17-0793, p. 16, n.11, 239 So.3d at 984.

In *Johnson*, we upheld the district court's directed verdict in favor of an employer after determining that its employee, a nurse anesthetist, who struck a bus on his way to work after being called in to report early for an emergency, was not on a special mission. *Johnson*, 17-0793, pp. 16-22, 239 So.3d at 984-87. The *Johnson* Court applied three jurisprudential variables in determining whether the special mission exception applied: 1) the relative regularity of unusualness of the particular going-and-coming trip; 2) the relative onerousness of the trip compared

---

[5] The terms "special errand," "special mission," "special order" and "specially ordered trip" are synonymous and refer to the same exception. See *Johnson*, 17-0793, p. 16, n. 11, 239 So.3d at 984. Throughout the remainder of this opinion, this Court will use the term "special mission" to refer to this exception.

9

with the service to be performed at the end of the trip; and 3) the suddenness of the call. *Johnson,* 17-0793, p. 18, 239 So.3d at 985 (citing *Larson, supra*).

Additionally, in *Fasullo*, a pedestrian was struck and killed by a high school football coach ("Coach") who was cycling against traffic to his high school on a non-work day. 00-2659, p. 1, 782 So.2d at 79. The pedestrian's widow ("the plaintiff") sued the Coach, his high school employer and its insurers, alleging that the school was vicariously liable for the Coach's actions because he was in the course and scope of his employment at the time of the accident. *Id*., 00-2659, pp. 1-2, 782 So.2d at 79. The defendant high school and its insurer (collectively "the defendants") filed an exception of no cause of action, alleging the teacher was merely commuting to work at the time of the accident. *Id.*

Thereafter, the Coach filed a cross-claim against the defendants averring that he was out on a specially ordered trip for the defendants at the time of the accident and therefore, was in the course and scope of his employment at the time of the accident. *Id*., 00-2659, pp. 2-3, 782 So.2d at 79. The defendants, in response, filed another exception of no cause of action to the Coach's cross-claim, restating the arguments of their initial exception. *Id*., 00-2659, p. 3, 782 So.2d at 79-80. The plaintiff and Coach later supplemented and amended their respective petitions to allege that the Coach was commuting to the high school at the time of the accident on a "specially ordered mission to review game file and to strategize for an upcoming football game." *Id*., 00-2659, p. 3, 782 So.2d at 80. The district court overruled the defendants' exception of no cause of action. *Id*. The defendants sought review of the denial of their exception of no cause of action in a supervisory writ application. *Id.*

10

On supervisory review, this Court reversed the district court's ruling and maintained the exception, finding that the plaintiff failed to allege facts showing that the Coach was within the power and control of the high school at the time of the accident and, further, that this defect could not be cured by ordering the plaintiff to amend the petition to allege additional facts. *Id.,* 00-2659, pp. 10-1, 782 So.2d at 84. This Court determined that just because an employee travels to his or her workplace on a non-work day to actually perform work does not mean that the employee is acting within the course and scope of the employee's employment while in transit:

> The mere facts [sic] that Mr. Finley was paid wages and that he was going to work on a day that might normally have been a non-work day does not change the nature of his trip to his job site. In the absence of allegations showing that Mr. Finley was performing some services to benefit his employer while in transit to work the day of the accident, it does not appear that Mr. Finley was in the course and scope of his employment at the time of the accident.

*Fasullo,* 00-2659, p. 10, 782 So.2d at 84.

Unlike the employees in *Fasullo and Johnson*, Mrs. Irving was not traveling to OLW's premises to perform work, rather she commuted to her workplace to submit to mandatory testing as a requirement for her employment. Moreover, the application of *Johnson's* factors here indicate that Mrs. Irving may have been on a special mission for OLW when she traveled to work to her workplace to fulfill a work-related duty.

Mrs. Irving's Tuesday testing trips were unusual in that prior to the pandemic, there is no indication that she had to travel to her workplace or anywhere on off-days for special testing during her decade-long employment with OLW. This requirement was seemingly born out of the COVID-19 pandemic.

11

Furthermore, it appears here that the trips may have been onerous for Mrs. Irving, who had to travel a distance from home to her workplace on a non-work day during a pandemic solely for testing without receiving pay or mileage reimbursement. "The 'onerousness' of the journey depends not only on its length but also on the circumstances under which it is made, i.e., the time of day, whether it is a regular workday, or the conditions of travel." *Johnson*, 17-0793, p.19, 239 So.3d at 986 (quoting *Barnes v. Children's Hosp.*, 109 Md.App. 543, 558, 675 A.2d 558, 565 (Md. Ct. Spec. App. 1996)). Lastly, Mrs. Irving was not suddenly called to work on the day of the accident, rather she had to arrive at OLW during the course of the day for testing.

As the OWC held, "[a]n accident which occurs while an employee is traveling to and from work is not in the course and scope of employment **unless the employer has an interest in that travel**." Here, the record shows OLW had such an interest. The date and location of OLW's COVID-19 testing were of OLW's choosing. Had Mrs. Irving been injured while commuting for COVID-19 testing to a third party site it might be clearer whether she was performing a "special mission" on OLW's behalf. The OWC should not be allowed to escape liability because it happened to choose its own location as its testing site. It is unclear whether the fact that OLW's employee COVID-19 testing site was its own premises precludes Mrs. Irving's entitlement to Workers' Compensation benefits under the special mission exception.

To this, add that the going and coming rule would neatly apply here had Mrs. Irving's commute been to her workplace to perform work. Mrs. Irving, however, commuted to her workplace to perform a work-related responsibility. OLW's directive to Mrs. Irving to weekly present herself to her fixed workplace

for COVID-19 testing on a designated day— even when she was off— in order for OLW to be deemed compliant with gubernatorial orders and federal mandates indicates that Mrs. Irving may have been on a special mission. The preponderance of the *Johnson* factors militates toward finding that there is a genuine issue of fact as to whether Mrs. Irving was acting within the course and scope of her employment at the time of her injury. Therefore, under the unique facts presented, we find that a genuine issue of material fact exists as to whether Mrs. Irving was acting within the course and scope of her employment when she traveled to OLW's premises for mandatory COVID-19 testing.

## DECREE

For the foregoing reasons, pursuant to this Court's *de novo* review, the August 19, 2020 Office of Workers' Compensation judgment, as amended on March 27, 2025, granting Our Lady of Wisdom Health Center's motion for summary judgment and dismissing Eva James Irving's claims with prejudice, is reversed and this matter is remanded for further proceedings.

**REVERSED AND REMANDED**